BUNNEL and Another *v.* WITHEROW.

MARRIAGE.—CONSIDERATION.—A promise of marriage is regarded as a valuable consideration, and will support a grant. Such contracts are favored in law.

FRAUDULENT CONVEYANCES.—Where it is sought to subject lands fraudulently conveyed to the payment of debts, it is not sufficient that fraud on the part of the grantor should be proved, but it must also appear that the grantee had notice of the fraudulent intent.

APPEAL from the *Clinton* Circuit Court.

ELLIOTT, J.—Suit by *Catharine Witherow* against *John Bunnel* and *Nancy Bunnel*, his wife, to set aside certain conveyances of real estate to said *Nancy*, and to subject said real estate to execution on a judgment against said *John Bunnel*.

The material allegations of the complaint are these: That said *John Bunnel*, being liable to the plaintiff in damages, on a breach of contract of marriage, the plaintiff, on the 13th day of *April*, 1863, recovered a judgment thereon against him, in the *Clinton* Circuit Court, for the sum of $225 and costs of suit. That on the 29th of *April*, 1863, the plaintiff caused an execution to be issued on said judgment, against the property of said *John*, to the sheriff of said county, which was subsequently returned by said sheriff, "no property found whereon to levy;" that afterwards, on the 28th of *September*, 1865, the plaintiff caused another like execution to be issued on said judgment, and delivered to the sheriff of said county, which remained in his hands at the commencement of this suit, to be executed; that on the 22d day of *August*, 1861, the said *John Bunnel*, being then the owner of a large amount of property, both real and personal, and being then liable to the plaintiff for breach of said marriage contract, and for the purpose of cheating, hindering, delaying and defrauding her, and defeating the recovery of her damages on said contract, voluntarily, and without any proper consideration, conveyed to *Nancy Crossley*, whom he afterwards married, and who is

a defendant herein, lots numbered 123 and 124, in the town of *Frankfort*, in said county; that at the time of executing said conveyance, the said *Nancy* had full knowledge of the fraudulent purpose of said *John* in making the same, and combined and confederated with him to cheat and defraud the plaintiff; that said *John*, also, at the same time and for the same fraudulent purpose, and without any consideration, conveyed to his daughter, *Julia Bunnel*, the undivided three-fourths of lot number 109, in said town of *Frankfort*, the said *Julia* well knowing the fraudulent intent and purpose of said *John* in making said conveyance at the time she received the same; and that afterwards, for the same fraudulent purpose, said *John* caused and procured said *Julia* to convey the same to said *Nancy*, who was then his wife; that afterwards, said *John Bunnel* purchased, of one *Jackson Douglass*, a valuable tract of land adjoining the town of *Frankfort*, in said county, which is particularly described, and paid for the same with his own money, which, for the same fraudulent purpose of cheating and defrauding the plaintiff, he caused and procured to be conveyed to his said wife *Nancy*; that he also purchased, with his own money, lot number 118, in said town of *Frankfort*, of one *Sarah Gray*, but fraudulently procured the same to be conveyed to said *Nancy*; that in all of said conveyances the said *Nancy* had full knowledge of the fraudulent intent of said *John*, and that she combined and confederated with him therein to cheat and defraud the plaintiff. Prayer that all of said conveyances be declared fraudulent as to the judgment of the plaintiff, and subject to sale on execution issued thereon against said *John Bunnel*.

The defendants answered separately. *John Bunnel* answered by a general denial. *Nancy* answered in two paragraphs. First, a general denial. The second alleges that prior to her marriage with said *John Bunnel*, and in consideration of her promise to marry him, and, as his wife, take charge of his household, said *John*, in *August*, 1861, assigned and delivered to her, said *Nancy*, two promissory notes on

*William Young* for $500 each; one note on *J. Douglass & Co.* for $500; one note on *John B. Pence* and *William Kelly* for $500, and a note on *George Bacon* for $300; and, at the same time, executed to her a deed of conveyance for lots numbered 123 and 124, in the town of *Frankfort*, described in the complaint. In consideration of which she did, on the 22d day of *December*, 1861, marry said *John*, and has in all respects complied with the terms of said contract on her part; that since the assignment of said notes and the conveyance of said lots, she has had the possession and control thereof, and has converted the proceeds thereof to her own use; that at the time she entered into said marriage contract, and received said notes and the conveyance for said lots from said *John*, she had never heard of, seen, or known anything of the plaintiff, nor had she then any knowledge or information that said *John* was liable to any person for the payment of any sum of money whatever, and she expressly denies that she received said notes and conveyance, or has retained the same, with the intention or for the purpose of delaying or defrauding any of the creditors of said *John*, or any other person; that the undivided part of lot 109, in *Frankfort*, referred to in the complaint, and the land purchased of *Jackson Douglass*, and also that bought of *Sarah Gray*, were purchased by her, said *Nancy*, with her own money and for her own use, as her separate and individual property, and denies every allegation of the complaint inconsistent with that paragraph of her answer.

The plaintiff replied to the answer of the defendant *Nancy* by a general denial, and a special paragraph in which the fraudulent intent of *John Bunnel*, in conveying said lots and assigning said notes to said *Nancy*, and her knowledge of his intended fraud, are reiterated.

The jury, to which the cause was submitted for trial, returned the following verdict, to-wit: "We, the jury, find for the plaintiff, and say that the conveyances mentioned in the complaint are fraudulent as against the plaintiff, and the property described therein should be subject to

the payment of the plaintiff's judgment." The jury also returned certain special findings, in answer to interrogatories propounded by the court.

The court refused a new trial, asked by the defendants, and rendered a final decree that the deed of conveyance mentioned in the complaint, executed by the defendant *John Bunnel* to *Nancy Bunnel*, "be, and is hereby, declared fraudulent and void, as against the plaintiff," and that the premises thereby conveyed are liable to be sold on execution for the payment of the plaintiff's judgment, and costs accrued and to accrue, concluding with a judgment for costs.

The defendants appeal. The errors assigned arise on the action of the court in overruling the motion for a new trial. One of the causes presented for a new trial, on which error is assigned, is that the verdict of the jury is contrary to the evidence. Another one is, that the court erred in giving to the jury instructions numbered one, two, and four, asked by the plaintiff, and given over the objection of the defendant.

A bill of exceptions contains all the evidence given in the case. The evidence on the part of the plaintiff is as follows: The judgment referred to in the complaint, in favor of the plaintiff against the defendant *John Bunnel.*

*Catharine Witherow,* the plaintiff, then testified, that the defendant *John Bunnel* came to see her and made proposals of marriage, and entered into a marriage contract with her about the last of *January,* 186–; that he came to see her frequently, and on the 16th of *November,* 1861, he came to the house where she lived; he had been hunting in the prairie, and had a gun on his shoulder. The plaintiff was sick. *John* had failed to come to see her at the time he promised, and in conversation she asked him if he intended to marry her, as he had agreed to. He said he would not, (using rough and profane language,) and said if she sued him "death was her portion," and that he would put his property where she could not get it. She had never told

him before that she would sue him. He was married in *December*, 1861, following.

*William Young* testified, that *Bunnel* held notes against him amounting to about $700, which, in 1862, he paid to Mrs. *Bunnel*, at *Douglass'* store. *Douglass* was the only person present when he paid Mrs. *Bunnel*. Two hundred dollars of the money, however, he afterwards paid to *Douglass*, with whom the note was left.

*Jackson Douglass* testified, that in 1862 he received from *Young* $200 for Mrs. *Bunnel*, and about the same time he received from Mrs. *Bunnel* $330, and gave a note for it, which he afterwards paid to her, partly in cash and partly in goods from the store; that he sold to Mrs. *Bunnel* the four acre lot referred to in the complaint; made the contract with her, delivered to her the deed at her own house, and received the purchase money from her; that he paid a judgment on *Baum's* docket in favor of *Julia Bunnel* against Mrs. *Bunnel*, amounting to about $100; also a judgment against *Bunnel* in favor of *Eli Spencer* for about $90; that *Bunnel* had left with him about $160, to apply on payment of debts. Mrs. *Bunnel* generally did the trading for the family, and settled the accounts. After *Bunnel's* marriage, he occupied the blacksmith shop on one of the lots in question, and continued to do so.

*William Kelly* testified, that he and *Pence* got $500 of *Bunnel's* money; that he saw *Bunnel* some time after his marriage, and told him they could pay a part of said amount. *Bunnel* directed the payment to be made to his wife. *Pence* paid part of it to Mrs. *Bunnel* at her house. They then renewed the note for the balance in Mrs. *Bunnel's* name, which the witness afterwards paid to her.

*John Barner* testified, that he took the acknowledgment of the deeds made by *John Bunnel* to *Nancy J. Crossley* and *Julia Bunnel*, but did not see any money paid.

*Samuel Ayres* testified, that *John Bunnel* deposited a note with him, on *David Young*, for five or seven hundred dollars, (dont remember which,) in 1861, and before his mar-

riage, and got from the witness, at the time, $100. Witness collected the note in *December*, 1862, and *Bunnel* drew the amount owing to him.

The plaintiff then gave in evidence a deed from *Julia Bunnel* to *Nancy J. Bunnel* for three-fourths of lot 109, in *Frankfort*, dated *July* 15, 1862. The consideration stated therein is $200. Also, a deed from *Jackson Douglass* and wife to *Nancy J. Bunnel* for the four acre lot referred to in the complaint, dated *December* 3, 1863. The consideration stated is $900. Also, a deed from *Sarah Gray* to *Nancy J. Bunnel*, in consideration of $430, for lot number 118, in *Frankfort*, dated *February* 2, 1865.

The plaintiff also gave in evidence certain interrogatories propounded to each of the defendants, to be answered under oath, and their respective answers thereto, which are as follows, viz: And first, the interrogatories to *John Bunnel* and his answers thereto:

"First. What use or disposition did you make of the money received by you for your farm north-east of *Frankfort*, sold to *George Bacon?*"

"Answer. The money received at the time of sale and shortly after, I loaned to *J. Douglass & Co.*, and *Pence* and *Kelly*. The notes taken from the above named parties, and the notes for balance on farm, I assigned to *Nancy J. Crossley*, except six hundred dollars, which was paid out on debts and current expenses."

"Second. How much of said money did you place in the control of *Nancy Crossley*, now your wife?"

"Answer. Twenty-two hundred dollars."

"Third. When were you and *Nancy Crossley* married?"

"Answer. About the —— day of *December*, 1861."

"Fourth. Why did you convey to her, on the 22d day of *August*, 1861, lots 123 and 124, in the town of *Frankfort*, and what was the consideration of such conveyance?"

"Answer. In consideration that she would become my wife, and for that reason."

"Fifth. Did not the consideration that purchased the

five acre tract, on the north side of town, from *Jackson Douglass,* proceed from you? Was it not your purchase and, in reality, paid for by you?"

"Answer. No."

"Sixth. Did you not have considerable amounts of money loaned out to different persons, or to one or more persons, during the years 1861 and 1862, and up to the date of the trial between the plaintiff and yourself in this court, in *April,* 1863?"

"Answer. I had notes and money up to the middle of *September,* 1861, when the transfer and disposition were made of them by me as specified in answer first."

"Seventh. How much money had you loaned out or deposited during the year 1861? How much during the year 1862? How much during the year 1863? And to and with whom were such loans or deposits made?"

"Answer. I had *Douglass'* and *Kelly's* notes for $900, money loaned in 1861, which were assigned to *Nancy J. Crossley,* as specified in the first answer. In the year 1862, I had $400 in the hands of *Samuel Ayres,* which was part of the $600 referred to in the first answer. In the year 1863, none."

"Eighth. How much money have you, at different times, given to your wife, with which to buy property, either directly or indirectly?"

"Answer. None, except as above set out in the first answer."

The interrogatories to *Nancy J. Bunnel,* and her answers thereto, are as follows:

"First. Where did you reside immediately prior to your marriage with *John Bunnel,* your husband?"

"Answer. I resided at my mother's, in *Warren* county, *Ohio.*"

"Second. Did you, on the 21st day of *August,* 1861, own any real estate? If you answer yes, state how much and where it was situated?"

"Answer. No."

"Third. Did you, immediately before the 22d day of *August*, 1861, own any personal property, choses in action, bonds, or other effects not obtained or received from *John Bunnel?* And if you answer yes, state of what description, of what value, and where the same was possessed."

"Answer. I had a bed and bedding and one bureau, worth one hundred dollars. It was at my mother's, in *Warren* county, *Ohio*."

"Fourth. Prior to your marriage with *John Bunnel*, did you receive any money, promissory notes, bonds, or other evidences of debt from him? If so, state when, how much, and of what value.

"Answer. Yes. About the middle of *September*, 1861, he assigned over to me five notes, amounting to twenty-two hundred dollars."

"Fifth. What amount of property did you own on the 21st day of *August*, 1861?"

"Answer. About one hundred dollars."

"Sixth. What was the consideration of the conveyance of lots numbered 123 and 124, in the town of *Frankfort, Indiana*, made to you by *John Bunnel*, on the 22d day of *August*, 1861?"

"Answer. The consideration was a marriage contract and the responsibility of taking charge of his family."

"Seventh. What was the consideration of the three-fourths of lot 119, conveyed to you on the 15th day of *July*, 1862?"

"Answer. It was two hundred dollars, paid to *Julia Bunnel* by me."

"Eighth. Did you not obtain that consideration from *John Bunnel*, your husband, if any you paid?"

"Answer. No, I did not. I paid it with my own money."

"Ninth. When were you married to *John Bunnel*, your husband?"

"Answer. I was married to *John Bunnel December* 22d, 1866," (1861.)

The defendant *Nancy Bunnel* was then sworn as a witness in her own behalf, and testified that she was married to *John Bunnel*, in *Warren* county, *Ohio*, on the 22d of *December*, 1861; that he commenced paying his addresses to her in *June* or *July*; that she had been acquainted with him, more or less, all her life; that they had lived in the same neighborhood in *Ohio;* that he made a proposition of marriage the first or second time he came to see her; that the notes of *Douglass, Pence* and *Kelly*, and *Young*, were delivered over to her by *Bunnel* about the 1st of *September*, and also the deed for the house and lot where they resided at the time of the trial; that they were delivered to her, and she received them, in consideration of her promise to marry him, said *John*, and take charge of his family and household, which she afterwards did, and still continued to do; that she bought the three-fourths of lot 109 from *Julia Bunnel* with her own money, derived from the notes she received from her husband before marriage; that she made said purchase to provide her husband, who is a blacksmith, with a place of business; that she also bought the four acre lot of *Douglass*, and the house and lot from Mrs. *Gray*, as her own separate property; that she contracted for them in person and paid for them with her own money; that at the time of her marriage with *Bunnel* she had never heard of *Catharine Witherow*, and did not know there was such a person until after she had sued *Bunnel*, nor did she know that *Bunnel* had ever gone to see the plaintiff, or had made a marriage contract with her, or with any other person; that she knew nothing of *Bunnel* owing her, or any one else, or of his having any outstanding liabilities of any kind, until after she came to *Frankfort*, and her husband told her that the plaintiff had sued him; that she received the notes and the deed for the reasons before stated, and had managed them ever since. She further testified, that she did not value herself at any particular price, or place any money estimate on her marriage contract, but agreed to marry *Bunnel* in consideration that he would deed her the prop-

erty and assign over to her the notes. She did not know anything about the value of the property, nor did she know the men the notes were on, or whether they were good or not, and made no inquiries about them.

This was all the evidence given to the jury. We have stated it thus fully as the surest mode of making an accurate presentation of the facts upon which the finding of the jury must rest.

Does the evidence sustain the verdict? We are very clear in the opinion that it does not, and will proceed to state the reasons upon which that opinion is founded.

The 17th section of the statute of frauds (1 G. & H. 352) declares that "all conveyances or assignments, in writing or otherwise, of any estate in lands, or of goods, or things in action," &c., "made or suffered with the intent to hinder, delay or defraud creditors, or other persons, of their lawful damages, forfeitures, debts or demands, shall be void as to the person sought to be defrauded." But that section is qualified by section 20 of the same act, which provides that "the provisions of this act shall not be construed to affect the title of a purchaser for a valuable consideration, unless it shall appear that such purchaser had previous notice of the fraudulent intent of his immediate grantor or assignor," &c. A promise of marriage will support a grant, or the transfer of personal property; it is regarded as a valuable consideration. Such contracts are favored in law, and are placed on an equal footing with those supported by an adequate consideration in money. It is said that "marriage is regarded as one of the strongest considerations in law, either to raise a use or to found a contract, gift or grant." 1 Par. Con. 554.

In the case under consideration, it may be conceded that the evidence is sufficient to justify the jury in finding that *John Bunnel* conveyed the two lots and transferred the notes to *Nancy* with intent to defeat the collection of any damages the plaintiff might recover against him. But this is not sufficient to sustain the verdict. It must also be

shown that *Nancy,* the grantee, prior to the reception of the deed and notes, or at least prior to their marriage, had notice of the fraudulent intent of said *John Bunnel.* This is an affirmative averment of the complaint. It is denied by the answer, and the burden rested on the plaintiff to sustain it by proof. It is a charge of fraud in fact, which cannot be presumed without evidence to support it. But it is not supported by any evidence whatever.

The plaintiff gave in evidence the answers of both the defendants to interrogatories propounded to them, but no question was asked of either of them as to the knowledge of *Nancy* of the alleged fraudulent intent of *John,* in conveying the lots and assigning the notes to her, nor is there any allusion to the subject in their answers. The only evidence in the record bearing on the question, is that of *Nancy Bunnel,* given in her own behalf, in which she not only most explicitly denies any notice or knowledge of the alleged fraudulent intent of *John,* but states, in positive terms, that at the time of their marriage she had no knowledge of the existence of the plaintiff, or that *Bunnel* was liable or indebted to any person whatever. The charge of notice to *Nancy* of *John's* fraudulent intent, thus stands without any evidence to sustain it, on the one side, while it is disproved on the other.

The instructions to the jury, complained of by the appellants, are not embraced in the bill of exceptions, nor were they excepted to in any other manner known to the statute, and hence, though they were copied into the motion for a new trial, they are not properly before us, and we cannot notice them. The verdict of the jury not being sustained by the evidence, the court erred in overruling the motion for a new trial, and for that error the judgment must be reversed.

The judgment is reversed, with costs, and the cause remanded for a new trial.

*S. McClurg, J. E. McDonald, A. L. Roache* and *D. Sheeks,* for appellants.

*R. P. Davidson,* for appellee.