GORDON v. WORTHLEY ET AL.

1. **Fraudulent Conveyance:** PROOF OF INSOLVENCY. In an action by a creditor to set aside a conveyance of real estate as fraudulent, it is not necessary that an execution shall have been returned *nulla bona*, if the creditor shall allege, and otherwise prove, the fact of insolvency.

2. ———: CONSIDERATION OF MARRIAGE. Where a conveyance was made to a woman by a party who held the property as trustee for another, under an agreement of marriage between the grantee and the latter, who was at the time married to another, but who was subsequently divorced, and who afterwards carried out the agreement of marriage, *held*, that although the grantee might have been ignorant of the fact of her husband's insolvency at the time of the conveyance, yet it was, in fact, fraudulent, and should be set aside.

*Appeal from Cherokee Circuit Court.*

TUESDAY, JUNE 4.

ACTION to set aside a conveyance of real estate, as having been made to defraud creditors. The plaintiff holds a judgment against the defendant Sewell Worthley for seven hundred and fifty-two dollars. The land in question is eighty acres in Cherokee county, standing in the name of the defendant Eleanor Worthley, wife of Sewell Worthley. The land formerly belonged to him, and was conveyed to her through a trustee before her marriage, and while the plaintiff's action was pending. She avers that it was conveyed to her in consideration of her marriage, and that she was ignorant at that time that Sewell Worthley was indebted. Other facts are stated in the opinion. Decree for plaintiff. Defendants appeal.

*Eugene Cowles* and *W. J. Galbraith*, for appellants.

*Kellogg & Herrick*, for appellee.

ADAMS, J.—I. No execution has been issued upon the plaintiff's judgment, and it is contended by the defendant

1. FRAUDU-
LENT convey-
ance: proof of
insolvency.

Eleanor Worthley that, such being the fact, the plaintiff should not be allowed to subject the land in question to the payment of his judgment. It was said, however, in *Postlewait et al. v. Howes et al.*, 3 Iowa, 383, that "if the creditor shall charge in his bill, and prove on the hearing that the debtor is, in fact, insolvent, and that an execution, if issued, must necessarily be returned unsatisfied, there is no reason for requiring him to go through the fruitless form of exhausting his legal remedy by return of execution no property found." While that question did not necessarily arise in that case, yet it appears to us that the rule announced is correct. The case of *Postlewait et al. v. Howes et al.* is referred to in *Gwyer v. Figgins*, 37 Iowa, 517, and its doctrine approved.

But it is said that the insolvency of the judgment debtor, in the case at bar, is not shown in any way. But in our opinion it is. Mrs. Worthley, in her testimony, says: "I was acquainted with his circumstances. I knew he had one hundred and sixty acres of land, one team, one cow, and some hogs." Evidence was also introduced showing that in Cherokee township, where he resided, there were assessed to him during the years 1873, 1874, 1875 and 1876 the same amount of property mentioned by Mrs. Worthley, and no other. There was evidence, also, that the records of deeds and mortgages of that county showed no other property in him. It is conceded that eighty acres of the land was exempt as a homestead. There was no evidence tending to show that he owned any property exempt from execution other than the eighty acres standing in Mrs. Worthley's name. A return upon execution of no property found would have been only *prima facie* evidence of insolvency. The evidence introduced was, we think, entitled to as much weight.

II. But Mrs. Worthley claims that she is a *bona fide* holder of the eighty, in pursuance of an ante-nuptial settlement.

2. ———:
consideration
of marriage.

Such settlements have been upheld, even when it was known to the wife that the husband was

indebted, the settlement not being grossly out of proportion to his station and circumstances. Jones' Appeal, 62 Penn. St., 324; *Brunnell v. Withrow*, 29 Ind., 123. In the case at bar, however, the settlement was grossly out of proportion to the husband's station and circumstances. He settled upon his wife all his property exempt from execution, and such a settlement certainly cannot be upheld, unless the marriage was not only the consideration of it, but was entered into by Mrs. Worthley in ignorance of her husband's indebtedness, and in ignorance of any circumstances which were sufficient to put her upon inquiry. Upon this point she says in her testimony that at the time of her marriage she was ignorant of her husband's indebtedness, and we see no evidence tending directly to show that she was not. We are well satisfied, however, that her husband intended to defraud the plaintiff, and that there were circumstances known to Mrs. Worthley which should have put her, as a prudent woman, upon inquiry. She found Worthley in possession of a quarter-section of land, one-half of which was exempt as a homestead, and the other half, the property in question, was standing in the name of one Gere. She derived her deed from Gere. Gere never claimed to own the property. Worthley claimed to own it, and dealt with her upon that ground. Gere's name was used as a cover, as she should have seen. It was not necessary to pass the title through a trustee to effect a marriage settlement, nor was it so pretended. Besides, the property was conveyed to Gere before Worthley had ever seen the defendant, who became Mrs. Worthley. It was conveyed to Gere October 28, 1873, and Worthley never saw her until November of that year. The title could not have been put into Gere's name in pursuance of any contract for a marriage settlement with her, and she should have known it. She must, we think, be regarded as affected with notice of Worthley's purpose in conveying to Gere, and that purpose was evidently to defraud the plaintiff. The conveyance was made, it appears, upon the day upon which the plaintiff brought his action to recover judgment.

Gere went through the form of paying money, yet it was talked between them that Gere should hold the title until Worthley should direct him to convey to some woman whom he might marry. The passing of money was not necessary for that purpose. That was done under a pretense of making an actual sale, the more effectually to conceal the property. When the unknown woman who was to receive the property in marriage settlement became known, it was conveyed to her. Now, while the circumstances known to her pertaining to the manner in which Gere held the title were, as we think, sufficient to charge her with notice of the character of the transaction between Worthley and Gere, the circumstances pertaining to her acquisition of the title were still more suspicious. It was conveyed to her November 20, 1873, and at that time Worthley was the husband of another woman, as both the parties well knew. Marriage, then, was not the consideration of the conveyance. It was conveyed to her wholly without consideration. She may have promised to marry Worthley, but such promise was not binding. The most that can be said is that she afterward married Worthley in consideration of being allowed to retain the property.

Whether a marriage can be a sufficient consideration to support a title, as against a creditor of a grantor, where the conveyance, when made, was without consideration, we need not determine. If it was made in this case in contemplation of marriage, as the defendants claim, then the indecent and inexcusable haste was sufficient to stamp the transaction with fraud. It seems probable to us, from the evidence, that the conveyance was made in contemplation that Worthley would bring an action and procure a divorce from the wife which he then had, and would marry the grantee. To say nothing of the immoral character of such a transaction, the question arises as to why the conveyance should be made in advance, not only of the marriage, but in advance of the procurement of the divorce from the other wife, and in advance, even, of the institution of a suit for a divorce. The transaction can have

but one explanation, and that is, that it was deemed necessary to conceal the property. Its odiousness is too great to justify the belief that it would have been perpetrated without any supposed necessity for it. We think that the judgment of the Circuit Court should be

AFFIRMED.