W. J. O'BRIEN AND THE FULLER & JOHNSON MANU-
FACTURING COMPANY v. JACOB STAMBACH, JOSEPH
STAMBACH, and AGNES STAMBACH, Appellants,
SEIBERLING, MILLER & COMPANY, Interveners and
Appellees.

**Fraudulent Conveyance:** EXISTING AND SUBSEQUENT CREDITORS.
Subsequent creditors may share in the proceeds where the con-
veyance of land by the debtor is set aside as fraudulent, at the
instance of the existing creditors.

**Fraudulent Conveyance:** EXHAUSTING REMEDIES: *Land in sister
state.* A creditor is not required to enforce his claim against
property of the judgment debtor in another state before pro-
ceeding against fraudulent grantees of the debtor to subject land
situated in the county where the judgment was obtained.

RETURN NULLA BONA. Where a judgment debtor is insolvent. issuance
of execution is not necessary to maintain a creditor's bill to
reach land fraudulently conveyed.

WHO MAY ATTACK. A fraudulent conveyance may be attacked by
persons who are creditors before it was made, though their judg-
ments were obtained thereafter.

SAME: *Fraudulent conduct of suitor.* Though the intention of a
debtor in giving to a creditor as surety, a bill of sale, in which the
consideration was recited at several times the amount of his
claim, was to deceive and defraud creditors, and though a suitor
must come into equity with clean hands, yet the creditor is not
thereby barred from attacking other conveyances of the debtor;
he not having known what the recited consideration was, and the
debtor having insisted to him that the bill of sale was made in
good faith and to secure him.

**Equitable Levy:** PERSONAL PROPERTY: *Fraudulent conveyance.* A
judgment creditor may make an equitable levy under Code, sec-
tions 3150-3152, on personal property alleged to have been fraudu-
lently conveyed by the debtor, and have the court determine
whether it shall be subjected to his judgment.

**Judgments:** PAYMENT: *Burden of proof.* Regularity of judgments
on which a creditors' bill is founded being admitted, they are *prima
facie* evidence of indebtedness, and the burden is on defendant to
prove payment.

SAME: *Plea and proof.* The claim that creditors realized from securities, and did not give the debtor credit therefor on their judgments against him on which their creditors' bill is founded, cannot be considered, unless raised by defendants' pleadings, and not then, if the matters arose before the judgments were obtained.

Appeal: OBJECTION BELOW. Whether or not a return of *nulla bona* is essential to subjecting *personal* property, objection that judgment creditors cannot subject personal property alleged to have been fraudulently transferred by the debtor without first issuing an execution and having a return *nulla bona*, cannot be first raised on appeal.

Evidence: WITNESS READING NOTES. A referee in supplementary proceedings who testifies that he took down the statements of the witnesses correctly, and that he can tell what they said by referring to his notes, and that he knows the notes taken at the time were correct, may read from such notes, although he has no personal recollection of what the witnesses testified to.

ADMISSIONS. A referee appointed in supplementary proceedings, is competent to testify as to admissions of the parties before him, although his appointment was irregular and he was not authorized to administer oaths.

*Appeal from Palo Alto District Court.*—HON. W. B. QUARTON, Judge.

FRIDAY, JANUARY 29, 1897.

CREDITORS' bill to subject certain real estate and personal property, standing in the name of Agnes Stambach, to the payment of judgments obtained by appellees against Joseph and Jacob Stambach. The lower court granted the relief demanded, and the defendants appeal.—*Affirmed.*

*T. F. McCue* and *B. E. Kelly* for appellants.

*Soper, Allen & Morling* for appellees.

DEEMER, J.—The property which the creditors seek to subject by this proceeding, consists of a blacksmith and wagon shop, a harness shop and lot, and a

dwelling house and lot; also a certain stock of harness, and the tools and fixtures belonging to the two shops mentioned above. At the time this action was commenced, the blacksmith and wagon shop and lot were in the name of defendant Joseph Stambach a son of defendant Jacob Stambach, but he afterward conveyed it to his mother, the defendant Agnes Stambach. The title to all the real estate is now in the name of Agnes Stambach. The harness shop and lot were acquired in March, 1893, the wagon and blacksmith shop and lot, in May, 1893, and the dwelling house and lot, in October, 1893. None of this property was the subject of transfer between husband and wife. It all came from a stranger, and the conveyances were made direct to defendant Agnes Stambach. The creditors claim that Jacob Stambach is the equitable and beneficial owner of all of this real estate and personal property; that it was purchased with his own means, and the title thereto taken in the name of his co-defendants, for the purpose of hindering, delaying, and defrauding creditors. This claim is denied by the defendants, and defendant Agnes Stambach specially pleads that the property was all purchased with her separate estate, derived from her friends and from labor performed before her marriage with Jacob. The judgment in favor of O'Brien was against Joseph Stambach, as well as Jacob; and Agnes Stambach asked that her title to the blacksmith and wagon shop property be quieted against the apparent lien of the O'Brien judgment. Such were, in substance, the issues on which the case was tried.

I. It is now insisted that none of the creditors are entitled to pursue the remedy adopted, for the reason that no executions were issued upon the judgments, and for the further reason that it is not shown that they have no remedy at law. It is true that there is no evidence of the issuance of

executions, and consequently, nothing of record to show that all legal remedies were exhausted. But we have frequently held that neither law nor equity requires the doing of entirely useless things, and that in suits to subject lands to the payment of judgments, where it is shown that the judgment debtor is insolvent, the creditor is not compelled to incur the expense and delay incident to the issuance and return of an execution *nulla bona* as a condition precedent to the right to maintain his suit. *Smalley v. Mass*, 72 Iowa, 171 (33 N. W. Rep. 619); *Gordon v. Worthley*, 48 Iowa, 429; *Postlewait v. Howes*, 3 Iowa, 383. It may be true that, as to the personal property involved in the suit, the objection is good. But more of this hereafter. It is further argued that there is no evidence that Jacob Stambach was insolvent at the time this suit was commenced. An examination of the record abundantly sustains the appellees' contention that Jacob was insolvent, and has been since the year 1891.

II. Appellants contend that there is no evidence that the appellees' judgments are unpaid. The record recites that, at the beginning of the trial, defendants admitted the regularity of the judgments and the filing of the transcrips as alleged in the petitions. These judgments were *prima. facie* evidence of the existence of indebtedness, and the burden was upon the appellants to plead and prove payment. Code, section 2718; Wait, Fraudulent Conveyances, section 74; *Junge v. Bowman*, 72 Iowa, 648 (34 N. W. Rep. 612). The cases relied upon by appellants are not in point. They relate to actions upon attachment bonds, where it is necessary to state, in order to show a cause of action, that the damages have not been paid.

III. Supplemental proceedings auxiliary to execution were had against defendant, Jacob Stambach, and he and his wife and son were examined before a

referee appointed for the purpose. This referee was called as a witness in this case, and was permitted to read from his notes the evidence of the witnesses before him. This evidence was all objected to in the court below, and the objection is renewed in this court. It is said there is no evidence of the referee's appointment, no showing as to who appointed him, and no evidence that he had authority to administer an oath. It is also argued that the whole of his evidence was incompetent. The first of these objections is without merit, for the reason that the witness was competent to testify as to admissions of the parties before him, although he had no appointment from the court and was not authorized to administer oaths. As a private person he would have the right to testify to admissions of the parties to the suit, which were otherwise relevant, competent, and material. The objection to the competency of the witness is, no doubt, predicated upon the assumption that, as he had no personal recollection of what the parties said before him, he could not give their statements in evidence. He did say that he took down the statements of the witnesses correctly, and that he could tell what they said by referring to his notes, and that he knew the notes taken at the time were correct. We have recently had occasion to consider the question here presented in the case of *State v. Smith*, 99 Iowa 26 (68 N. W. Rep. 428), and we there held that such evidence as was given in this case was admissible. See, also, *State v. Brady*, 100 Iowa, 191 (69 N. W. Rep. 290). Certain of the admissions testified to by this witness will not be considered by this court, for the reason that this particular evidence is incompetent and immaterial. It need not at specifically referred to at this time, for the reason that the point does not properly arise under this division of the opinion.

IV.   Appellants insist that the appellees are not entitled to the relief demanded, for the reason that the evidence shows that they, or some of them, have or had security for their claims, and for the further reason that they, or some of them, have realized from this security, and have not given Jacob Stambach credit on their judgments for the amounts so realized.   There is no pleading raising the issue sought to be presented in this branch of appellants' argument, and we need not give it any further attention.   If the matters referred to arose before the creditors obtained their judgments, then they are concluded by the judgments.   If they arose afterwards, then defendants must plead them, in order that they may be considered.   *Diamond v. Jones*, 76 Iowa, 422 (41 N. W. Rep. 60).   See, also, 5 Enc. Pl. & Prac., p. 530, and cases cited.   If it be conceded that Jacob Stambach has property in Dakota, as it is claimed, it is not required of the creditors that they go out of the state to enforce their claims before proceeding against some of his fraudulent grantees to subject real estate situated in this state, and in the county where the judgments were obtained.

V.   As to the merits, the defendant Agnes Stambach claims that she had money of her own before she married Jacob; that she loaned this money to her husband from time to time after her marriage; that in the year 1890, the husband conveyed to her certain property, at a time when they were living in Dakota, in satisfaction of her claims; that with the proceeds of this property she purchased the property in question; and that she is the owner thereof.   With reference to the blacksmith shop and lots, which, it seems, were deeded to Joseph, her claim is that the deed was made upon condition that he (Joseph) should remain with the family and work for her until he was

twenty-one years of age; that afterwards Joseph concluded not to carry out the arrangement, and thereupon conveyed the property to this defendant. The plaintiff's deny all these claims, and say that Jacob Stambach is the beneficial owner of all the property, and that, title is in the wife for the sole and only purpose of defrauding the creditors of the husband. Much of the evidence taken on these issues was incompetent, and, without stopping to point out, it is sufficient to say that we consider such of it, and only such, as we believe to be competent. It appears that none of the property now in question came by conveyance directly from the husband. The harness shop lot and improvements were contracted for by Jacob Stambach in March, of the year 1893, and the price was secured by a mortgage upon the chattel property brought by defendants from Dakota, and, which the defendant Agnes claims to own. The deed to the property was executed in January, 1894, and ran to Agnes Stambach. The purchase of the wagon and blacksmith shop was made in May, 1893, while the case of Fuller & Johnson against Jacob Stambach was pending. The deed was made to Joseph Stambach at the instance of Jacob. The dwelling house was purchased in the fall of 1893, and the deed was taken in the name of Agnes Stambach. The contract was made by Jacob Stambach however, and he made the payments for the property. When the family removed from Dakota to Iowa, in the year 1891, Jacob Stambach leased the land which they went into possession of, and he conducted the business relating to it in his own name. He also mortgaged and dealt with the property which was brought from Dakota as if he were the owner· thereof, although he claimed that, at all times, he did it at the instance and suggestion of his wife.

It is claimed on behalf of appellants that the judgment creditors are all subsequent ones, and that they cannot complain.  The Fuller & Johnson judgment was obtained June 7, 1893, on a debt contracted January 11, 1888; the W. J. O'Brien judgment was rendered January 16, 1894, on a debt contracted May 23, 1893; and the Seiberling judgment was rendered October 5, 1894, on a debt contracted July 23, 1884.  It will be observed that two of these claimants were creditors long before the bill of sale from Jacob Stambach to his wife, covering the live stock in Dakota, was executed, and the debt to O'Brien was in existence at the time the dwelling house property and the wagon and blacksmith shops were purchased.  Now, while it may be that O'Brien could not complain of the conveyance of the harness shop, or possibly of the wagon and blacksmith shop, if the suit were brought by him alone, because he is a subsequent creditor, and while, for the same reason, he might not complain of the bill of sale of the live stock, yet the other parties may do so, and it seems to be well settled that, where a conveyance is set aside at the instance of existing creditors, subsequent creditors may also share in the fruits of the litigation.  Wait, Fraud. Conv., section 104, and cases cited.  As we have already said, Jacob Stambach treated all the property to which we have referred as his own, he mortgaged and sold it in his own name, with the knowledge of the wife, and without objection on her part, save as any wife might from time to time offer objections to the sale of some favorite animal or some desirable piece of property.  The business transactions were all in the name of the husband, except the conveyances of the real estate in question, and the bill of sale made to the wife for the live stock in Dakota.  Agnes Stambach admits all this; but she claims she was consulted as to all transactions,

and that her husband acted as her agent, generally, after they left Dakota, that since that time he had nothing, and that she has owned all. She further claims that she had one thousand one hundred or one thousand two hundred dollars when she was married, and that she either purchased the personal property which was brought to this state from Dakota, or that she loaned her husband money from time to time during their residence in that state, and that the bill of sale to which we have referred, was made in satisfaction of the amount loaned. She makes the former claims at one time, and the latter at another, but we are not content to accept either claim. Her account as to the amount of money she had when she went to Dakota, as to how she obtained it, and what she did with it, is unsatisfactory and contradictory. And it appears to us, that while she may have had some money in her own right when she married Jacob, she entrusted him with what she had without expectation that it would be returned, or that the property purchased therewith should be hers. The bill of sale executed in Dakota, was made, as we are constrained to believe, to defraud the husband's creditors. It is shown by the evidence that they had trouble with their creditors at the time they left Dakota, and we have no doubt the bill of sale was made to enable them to get away with the property. It was a cover and a sham, and was not intended by either of the parties to be more than a shield as against the assaults of creditors. If we should hold it to be good as between the parties, and thus give a different effect to what we believe was intended, or if we should hold the bill of sale good as against creditors, yet we do not think that it sufficiently appears that the proceeds of the property covered thereby, was the consideration for the property which is now the subject of controversy. Various loans of money were made from time to time by the

husband, and money and property were acquired by him, after he came to Iowa, which went into the property which plaintiffs now seek to subject. Agnes Stambach cannot claim the property by reason of having furnished the consideration therefor, unless she makes it appear that some part, if not the whole of the consideration furnished was her money or property. This she does not do by that quantity of the evidence required.

It is further said in argument that the increase of the stock brought from Dakota belonged to the wife, and that this was a part of the consideration of the property in question. This would be true if it were shown that she owned the property which came from Dakota. But, as we have said, we do not think that she did; and, if the bill of sale was intended to have any effect, it was to defraud creditors. It will be remembered that this bill of sale was made in July, 1890. This action was commenced in October, 1894, so that the statute of limitations has not barred a direct attack upon the conveyance. The question as to the title to the personalty under the bill of sale, in virtue of the statute of limitations applying to it and defeating creditors of their right to attack it, is not in the case.

With reference to the personal property attempted to be reached by this suit, it is enough to say that courts of chancery, before the adoption of the Code, recognized such remedies as were adopted in this case for the purpose of reaching and subjecting that character of property. Such a proceeding was denominated an "equitable levy," and it has a well-defined place in equitable proceedings. Our statute in express terms gives such a remedy. Code, sections 3150-3152. And while the proceedings are somewhat unusual, yet rarity is not always a test of correctness. We concede that the general practice

is to levy on personal property, and determine the ownership by action of replevin; but, under the statute quoted, there is no doubt but that a judgment creditor may proceed to make an equitable levy upon personal property, the title to which is in dispute, and have the court determine whether it shall be subjected to his judgment or not.

It is said, however, that the creditors cannot subject this personal property without first issuing an execution and levying upon the same and having a return of *nulla bona*. There are numerous authorities which hold to the rule as claimed, but we do not feel called upon to decide the question at this time. This identical point was not presented to the court below, nor is it in terms presented here, and, as it is not jurisdictional, we must decline to consider it. At most, it is a technical objection, and should not be allowed to defeat the suit unless raised at a proper time and presented to the lower court in the regular manner.

VI. Appellants seek to apply the maxim, "He who comes into equity must come in with clean hands," to appellee O'Brien. It seems that he took a bill of sale from Jacob Stambach as security for his claim, in which the consideration was recited as seven hundred dollars. This was several times as much as his claim, and it is said it was fraudulent, and that a court of equity will not give ear to his complaint that the other conveyances were fraudulent. That such a transaction is presumptively fraudulent must be conceded, and that Jacob Stambach made it as he did for the purpose of deceiving and defrauding creditors, cannot be doubted; but we do not think it sufficiently appears that O'Brien was so implicated in the fraud as to bar his action to subject the property in question. O'Brien did not know, when he accepted the bill of sale and had it recorded,

what the stated consideration was, and while Stambach no doubt had in mind the defeat of creditors, yet he insisted to O'Brien that the instrument was made in good faith, and to secure him for the loan.   A careful consideration of the case as it is presented in the abstracts, and in the transcript of the evidence to which we have resorted, leads us to the conclusion that the decree is right, and it is AFFIRMED.