[Filed March 28, 1887.]

# LYONS AND CHAMBERLAIN, Respondents, *v.* JAMES B. LEAHY, Appellant.

Fraudulent Transfer.—A conveyance made without any consideration, or upon some reservation for the benefit of the grantor, or to some person who has no interest in the conveyance, or upon a secret trust, may be set aside without reference to the knowledge or intent of the grantee.

Same. —The equity of a purchaser for a valuable consideration is greater than that of a creditor.

Same.—Notice of the fraudulent intent of the grantor must be actual; but it is a question of fact, and may be established by direct evidence, or it may be inferred from circumstances, and from proof of the vendee's knowledge of facts calculated to awaken suspicion.

Same. —Knowledge of facts which should put a prudent man upon inquiry are sufficient to warrant an inference of actual notice.

Same. —Where the grantor being insolvent transferred property to his business partner, by whom it was transferred to grantor's brother, defendant, without consideration in either case, and defendant negotiated a loan of six hundred dollars upon the property, which was worth two thousand five hundred dollars, and gave the six hundred dollars to the insolvent, and it was claimed it was used by him to pay some of his debts, the transfer was, set aside as crediting a secret trust, and because it was fraudulent.

Same. —The deed being fraudulent was not allowed to stand as a security for money advanced.

Appeal from Multnomah County.      Affirmed.

Facts are stated in the opinion of the court.

*Woodward & Woodward,* and *W. M. Gregory,* for Respondents.

1. A voluntary conveyance by an insolvent debtor imports fraud. (Bump on Fraudulent Conveyances, § 265.)

2. If the voluntary deed operated to hinder creditors the fraudulent intent will be conclusively presumed.

3. *Bigelow* v. *Stringer,* 40 Mo. 195; *Greens* v. *Tantum,* 19 N. J. Eq. 109.

4. The purchaser should prosecute inquiry where circumstances are suspicious. (*Bartlett* v. *Gibson,* 17 Fed. Rep. 297; *Atwood* v. *Impson,* 20 N. J. Eq. 156; *Baker* v. *Bliss,* 39 N. Y. 70; *Avery* v. *Johann,* 27 Wis. 251; *David* v. *Birchard,* 53 Wis. 492; Kerr on Fraud, 236; *Dewitt* v. *Van Sickle,* 29 N. J. Eq. 209.)

5. The appellant having taken the property subject to a secret trust in favor of the insolvent debtor, the conveyance to him was void. *(Lukens* v. *Aird,* 6 Wall. 78; *Power* v. *Allston,* 93 Ill. 587; *Moore* v. *Wood,* 100 Ill. 451.)

6. A fraudulent purchaser claiming to hold for himself absolutely will not be protected. *(Ferguson* v. *Hillman,* 55 Wis. 181; *Post* v. *Stiger,* 29 N. J. Eq. 554; *Murtha* v. *Curley,* 90 N. Y. 372.)

*Alex. Bernstein,* for Appellant.

Fraud is never presumed.

It is not sufficient to prove fraud in the grantor, unless the grantee participated therein.

LORD, C. J. — The plaintiffs brought this suit to have certain deeds, conveying certain real property from the defendant James B. Leahy to the defendant Isaac N. Solis, and the same from the defendant Isaac N. Solis and Maria, his wife, to the defendant William J. Leahy, set aside, on the ground that the same were executed without any consideration, and for the purpose of hindering, delaying, and defrauding the plaintiffs, judgment creditors of James B. Leahy. After issue joined, the suit was referred and tried before a referee, who found on all the questions involved in favor of the plaintiffs, and reported the same to the court, all of which was subsequently confirmed by the court and a decree entered in accordance therewith. From this decree the defendant William J. Leahy appeals to this court. The contention of the appellant resolves itself into two propositions: (1) That he is a purchaser in good faith and for a valuable consideration, and that the deed executed to him ought to be allowed to stand; but (2) that if the court for any reason should not sustain this proposition, that the deed to him should be allowed to stand as security for his re-imbursement or indemnity.

*Notice of fraudulent intent.* Under the provisions of statute, when a conveyance is alleged to have been made with the intent to hinder, delay, and defraud creditors, the question of fraudulent intent is to be deemed a question of fact and not of law

(§ 54); but the provisions referred to are not to be construed to affect or impair the title of a purchaser, for a valuable consideration, unless it shall appear that such purchaser had previous notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor. (Misc. Laws, § 55, p. 523.) It is "previous notice" of the fraudulent intent of the grantor which renders void the conveyance of the purchaser for a valuable consideration. When the conveyance is made without any consideration, or upon a secret trust, or upon some reservation for the benefit of the grantor, or to some person who has no interest whatever in the conveyance, the knowledge and intent of the grantee are not material, and the conveyance may be set aside at the instance of the creditors. But when the grantee pays a valuable consideration for the property, and without "previous notice" of the fraudulent intent of the grantor, he will be protected in the purchase. The equitable interest of the creditor in the property of the debtor the law recognizes, and declares a transfer intended to defeat their demands as fraudulent and void; but the statute protects the rights of a purchaser for a valuable consideration, and without notice of the fraudulent intent on the part of the grantor, because, as Mr. Bump says, "the equity of such purchaser is superior to that of a general creditor, for the obvious reason that the purchaser has not, like the creditor, trusted to the personal responsibility of the debtor, but has paid the consideration upon the faith of the debtor's actual title to the specific property." (Bump's Fraudulent Conveyances, 228.) As to what will constitute notice seems to be of difficult definition. It is usually distinguished by the text-writers as actual or constructive notice. But the groupings under these heads have not always been satisfactory, and the adjudicated cases indicate much confusion and conflict as to what is actual notice. (Wade on Notice, p. 2; 2 Pomeroy's Equity Jurisprudence, § 596.) In New York, under a statute like our own, it is held that the notice under the provisions cited is actual notice; that such notice or knowledge may be established by direct evidence, or it may be inferred from circumstances, and established by proof of the vendee's

knowledge of facts pointing to the fraudulent intent or calculated to awaken suspicion; but that where it appears that he was entirely innocent and free from any guilty knowledge or suspicion, mere negligence in not inquiring into facts known to him which were calculated to put him upon inquiry is not equivalent to a want of good faith, and does not charge him with notice of the fraud. Rapallo, J., said: "Although the vendee, in fact, acted in good faith and did not even suspect fraud, yet, if the jury think he ought, under the circumstances, to have been suspicious and to have looked for fraud, his innocent confidence in the integrity of his vendor must be punished by the loss of his title, and he must be charged as a party to any fraud which investigation would have disclosed. . . . . We think in cases like the present, where an intent to defraud creditors is alleged, the question to be submitted to the jury should be, whether the vendee did in fact know or believe that the vendor intended to defraud his creditors, and not whether he was negligent in failing to discover the fraudulent intent," etc. (*Parker* v. *Conner*, 93 N. Y. 124; *Stearns* v. *Gage*, 79 N. Y. 102.) These cases repudiate the doctrine of constructive notice as having no application in such case. In this court, the law as thus decided was applied and approved. In *Coolidge* v. *Heneky*, 11 Or. 327, it was held that where a valuable consideration is paid, the grantee is not affected by anything short of actual notice of the fraudulent intention of the grantor in making the conveyance, and that the doctrine of constructive notice has no application in such case. In Wisconsin, under a like statute, a different conclusion seems to have been reached, or at least, a less strict rule is held. In *Hoover* v. *Hump*, 65 Wis. 78, the court say: "The words 'actual notice' in section 2243 of the Revised Statutes, and 'previous notice' in section 2324 of the Revised Statutes, are equivalent expressions, and the rule stated is, that notice must be held to be actual when the subsequent purchaser has actual knowledge of such facts as would put a prudent man on inquiry, which if prosecuted with ordinary diligence would lead to actual notice of the right or title in conflict with that which he is about to purchase. Where the subsequent pur--

chaser has such knowledge of such facts, it becomes his duty to make inquiry, and he is guilty of bad faith if he neglects to do so, and consequently he will be charged with the actual notice he would have received if he had made the inquiry." Here, the court holds that a knowledge of such facts as would put a prudent man on inquiry, if prosecuted, amounts to notice, and charges him, in contemplation of law, with knowledge of the fraudulent intent of his grantor. Other cases might be referred to, but these are sufficient to illustrate the divergence of judicial utterance under a like statute as to actual notice. As the fraudulent intent is a question of fact and not of law, all agree that notice of such intent may be proved by direct evidence, or inferred from facts and circumstances. When the fact of the intended fraud is shown to have been communicated orally or in writing to the party to be charged, the evidence is direct of actual notice. But experience has demonstrated that this kind of proof can seldom be expected or obtained. Hence, the circumstances of the transaction must be resorted to for ascertaining the truth, or uncovering the fraud. When the facts and circumstances in which the transaction originated are of so significant character as to point to the fraudulent intent of the grantor—in effect to impart knowledge of it to the grantee— the inference of actual notice may be quite as convincing to the mind as where the information is conveyed directly. It sometimes happens that the facts which environ a transaction, quite as satisfactorily explain or disclose its true inwardness, and impart knowledge of its object, or of the intended fraud, as any declaratory statement or other information more directly conveyed. But it is not always possible to establish a state of facts from which actual notice of the fraudulent intent may so satisfactorily or convincingly be inferred and fastened upon the grantee. The facts in evidence may be only such as are calculated to excite suspicion and put a prudent man upon inquiry, but these, admitted or uncontradicted, are sufficient to warrant the inference of actual notice, as, in that case, the facts are not susceptible of any other rational deduction. A transfer of property with knowledge of such facts, although for a valuable con-

sideration, is inconsistent with good faith and fair dealing, and, therefore, as a reasonable inference, warrants the finding of actual notice of the intended fraud.

*Facts showing fraudulent intent.* Now turning to the evidence, the facts in ·this case show that the defendant James B. Leahy is the brother of the defendant Wm. J. Leahy, and that the defendant Isaac N. Solis a short time before had been the business partner of James B. Leahy; that at the time the property was transferred to Solis, James B. was insolvent, and that the transfer was made without consideration; that the property would have brought at a forced or cash sale two thousand five hundred dollars; that Solis, after holding the property for a few days, and manifestly under the circumstances as detailed in the record, in trust for James B., and at his request, transferred the property to Wm. J. without consideration. During all this time Wm. J. knew thoroughly the financial troubles and condition of James B. — had gone over minutely his accounts, and had counseled and advised with him concerning his affairs, and at the time he took the property from Solis, at the instance of his brother, knew and understood the circumstances under which Solis took and held the property. It is explained that the property was put in the hands of Solis to raise money to pay debts; but the conduct of Solis so shortly after the transfer, his refusal to go forward, or have anything to do with it, his unwillingness to longer hold the property, and the necessity he made of putting it into other hands to retain the secret trust already created, is inconsistent with such explanation, and shows that the property was put beyond the reach of creditors to hinder and delay their demands. The same argument is made in behalf of Wm. J., with this difference: As to him, it is claimed that although he took the property with a knowledge of such facts, that it was for the purpose of, and that he, in fact, did borrow of the Loan Association, of which he became a member, to further that object, about six hundred dollars, giving his personal note for one thousand dollars, and mortgaging this property to secure it, which he represented to be worth three thousand dollars, and that he paid over to his brother the money thus obtained (six

hundred dollars) which was applied to the payment of some particular debts. For this reason it is claimed that he is a purchaser for a valuable consideration, and that his title ought not to be affected or impaired. Why is it, if either of the Leahys wanted to pay the creditors, that the property was not put in the market when it would have brought two thousand dollars at least, instead of taking this roundabout transaction to secure six hundred dollars? And what explanation is there of this residue, conceding the facts as stated, which is still retained to the delay of creditors? And why is it that this particular debt, or debts for which there was so much anxiety to pay, and so much trouble to secure the pittance of six hundred dollars to pay with, cannot be remembered, the amount, or names, or anything about it? The facts show that when the defendant Wm. J. took title to the property from the defendant Solis, he dealt with and recognized the defendant James H. as the true owner of the property, notwithstanding the deed from Solis, and that he knew the character of the transaction and its purpose, and that he lent himself to its furtherance. It is admitted that mere inadequacy of consideration is not of itself sufficient to invalidate a sale, or the fact of relationship, without proof that the grantee had notice of the grantor's intent to defraud his creditors. But the facts themselves, taken collectively, are decisive of the intent to hinder and delay creditors, and that he had notice of it.

*Deed not allowed to stand as security.* As a last resort, however, it is asked that the deed be allowed to stand to re-imburse him, or as a security for his personal liability on the note to the Loan Association. The result which we have reached precludes this. A fraudulent deed cannot stand as security for money paid on it. In *Levisay* v. *Beard,* 22 W. Va. 585, it is held that a deed fraudulent in fact is void *in toto,* and cannot stand as security for grantees who have notice of the fraud. In *Swinford* v. *Rogers,* 23 Cal. 233, it is held that a conveyance of a property made and received with intent to defraud creditors is void, though there may have been a full and valuable consideration paid therefor. The fraud taints and vitiates it, and it will not be allowed to stand, even as security for advances actually made.

(See, also, *Goodwin* v. *Hammond,* 13 Cal. 170.) The case of *Crawford* v. *Beard,* 12 Or. 447, is not in point. There the court expressly found that the deed was not executed with the intent to hinder and delay creditors, and under the facts, the court held that it might be allowed to stand as a security for re-imbursement. The decree must be affirmed, and it is so ordered.