Argued 13 November; decided 9 Dec., 1901; rehearing denied 27 Jan., 1902.

### GARNIER v. WHEELER.

[66 Pac. 812.]

FRAUDULENT CONVEYANCES—GENERAL RULES.

1. In considering whether conveyances made by debtors are fraudulent, several rules are well established, among which may be mentioned these : the grantee must know of the intent to hinder and defraud and acquiesce therein ; the fraud may be inferred from surrounding circumstances ; and conveyances between relatives will always be very closely examined.

EVIDENCE OF FRAUDULENT INTENT.

2. The evidence does not show that the grantee in the conveyance in question participated in the fraudulent intent of the grantor, if it be conceded that the latter meant to delay his creditors.

From Washington: THOS. A. McBRIDE, Judge.

Suit by Jean Baptiste Emile Garnier and others against Ira E. Wheeler and others. From a decree for defendants, plaintiffs appeal.                                    AFFIRMED.

For appellants there was a brief over the names of *Emmons & Emmons,* and *Gustavus C. Moser,* with an oral argument by *Messrs. Halmor H. Emmons,* and *John Wesley Bell.*

For respondents there was a brief and an oral argument by *Messrs. Samuel B. Huston,* and *Thos. H. Tongue.*            .

MR. JUSTICE MOORE delivered the opinion.

This is a suit to set aside a deed as to a part of the real property conveyed thereby, and to subject such part to the payment of a judgment. The admitted facts are that the defendant Ira E. Wheeler executed to B. Phillips, August 19, 1893, three promissory notes, each for the sum of $200, payable in ninety, one hundred and fifty, and two hundred and ten days, respectively; that Wheeler was then the owner of the property so conveyed, which, on October 5, 1893, for the expressed consideration of $8,000, he conveyed to his brother, the defendant David R. Wheeler; that said notes were assigned to the plaintiffs, and, no part thereof having been paid, they, on April 13, 1895, secured a judgment in the circuit court for Multnomah County against the maker for the amount due thereon, and on February 25, 1897, executions .theretofore issued thereon to the sheriffs of Multnomah and Washington counties were returned *nulla bona;* that David Wheeler conveyed away a part thereof, and now owns only lots Nos. 1, 2, 3, 4, 5, 7, 8, 10, 11, 12, and the west half of lot 9, in Wheeler's Subdivision in Washington County, as appeared by the recorded plat thereof. It is alleged in the complaint that Ira E. Wheeler fraudulently conveyed said land to his brother without consideration, and with intent to hinder, delay, and defraud his creditors; that upon the execution of the deed he became, and still is, insolvent; and that no part of said judgment has ever been paid. The defendant David R. Wheeler, an-

swering the complaint, denied the material allegations thereof, and averred that at the time said deed was executed his brother was indebted to him in the sum of $2,700; that said premises were subject to the lien of a mortgage to secure the sum of $1,250 and interest, the payment of which he assumed; that he paid his brother the sum of $1,500, and executed to him a promissory note for the sum of $2,000, in consideration of said land, and that he had fully paid said note; that he purchased said premises, and paid full value therefor, without notice or knowledge of plaintiff's claim, and without fraudulent intent of any kind or character whatever. The reply having put in issue the allegations of new matter in the answer, a trial was had, resulting in a decree dismissing the suit, and plaintiffs appeal.

1. The question presented for consideration is as to whether David R. Wheeler was an innocent purchaser for a valuable consideration, without knowledge or notice of any bad intent on the part of his brother. "Three things," says Mr. Wait in his work on Fraudulent Conveyances (section 369), "must concur to protect the title of the purchaser: (1) He must buy without notice of the bad intent on the part of the vendor; (2) he must be a purchaser for a valuable consideration; and (3) he must have paid the purchase money before he had notice of the fraud." Every conveyance of any estate or interest in lands made with the intent of hindering, delaying, or defrauding creditors is voidable as to them: Hill's Ann. Laws, § 3059; *Bradtfeldt* v. *Cooke,* 27 Or. 194 (50 Am. St. Rep. 701, 40 Pac. 1). The grantor's intent to defraud his creditors, however, will not defeat the title of a purchaser for a valuable consideration, unless it appears that the latter had previous notice of such intent [Hill's Ann. Laws, § 3062; *Lyons* v. *Leahy,* 15 Or. 8 (13 Pac. 643, 3 Am. St. Rep. 133); *Philbrick* v. *O'Conner,* 15 Or. 15 (13 Pac. 612, 3 Am. St. Rep. 139)]; the rule being that the deed will not be set aside for fraud unless it appears that the grantee accepted a conveyance with knowledge of the grantor's fraudulent intent, thereby participating in the fraud: *Bonser* v. *Miller,* 5 Or. 110. The fraudulent

intent is a question of fact (Hill's Ann. Laws, § 3062), which may be established by direct proof, or, in a suit in equity, inferred from the facts and circumstances surrounding the transaction: *Coolidge* v. *Heneky*, 11 Or. 327 (8 Pac. 281); *Lyons* v. *Leahy*, 15 Or. 8 (3 Am. St. Rep. 133, 13 Pac. 643); *Philbrick* v. *O'Connor*, 15 Or. 15 (3 Am. St. Rep. 139, 13 Pac. 612). A conveyance of real property to a relative is always closely scrutinized when the *bona fides* of the transaction is challenged by the grantor's creditors; the presumption in such cases being that the fraudulent intention of the grantor, by reason of the intimacy of the parties, must have been known to, and participated by, the grantee: *Jolly* v. *Kyle*, 27 Or. 95 (39 Pac. 999); *Feldman* v. *Nicolai*, 28 Or. 34 (40 Pac. 1010.); *Flynn* v. *Baisley*, 35 Or. 268 (45 L. R. A. 645, 76 Am. St. Rep. 495, 57 Pac. 908).

2. The evidence shows that the defendant Ira E. Wheeler owned lot 3, block 22, in Wheeler's Addition to East Portland, which was attached October 4, 1893, in an action brought against him in the circuit court for Multnomah County by the Gambrinus Brewing Company to recover the sum of $400, with interest from August 19, 1893. James Hume, who lived in Washington County, near the residence of David R. Wheeler, appearing as plaintiffs' witness, testified that on the day Ira E. Wheeler's property was attached he met the latter in Portland, and was requested by him to tell his brother David R. to meet him in Hillsboro the next day, and accept a transfer of said real property. The witness, being requested to "state what that conversation was," said: "I was in there, and Mr. Wheeler asked me if I was going out, and I said I was going out to-night, and he asked me if I would come down to his brother's, and tell him what to do,—to come up here. Q. What was that? A. To transfer the property over to his brother. Q. Did he tell you why he wanted it transferred? A. Well, he said he wanted to beat them fellows. I don't know what he meant or who he meant. Q. Did he say what fellows? A. No, sir. Q. Did you go out? A. I went out, and came down next morning, and told him what he told me to tell him, and I delivered

my message, and he came up here.   *   *   *   Q. What did
you tell David? A. What his brother told me. Q. Relate it.
A. That his brother wanted him to go up and transfer his prop-
erty over to him. Q. Up where? A. To come up to Hillsboro.
He came up on the train the next morning." Ira E. Wheeler
testified that he had been asking $10,000 for the land, but
David offered him only $8,000, and that he told Hume to tell
his brother he accepted his offer, and would go to Hillsboro
next day, and execute a deed to him therefor, but denies having
told him that he intended to beat any one. Hume does not tes-
tify that he informed David that Ira wanted to beat "them fel-
lows," or to defraud any of his creditors. He says he informed
David as Ira requested him, from which it might be inferred
that he told David Ira wanted to convey the property to de-
fraud his creditors. But, when requested to relate the state-
ment which he made to David, he says, in effect, he told him
his brother wanted him to go to Hillsboro to take a transfer
of the property.

From a careful examination of the testimony, we do not
think David had any knowledge or notice of his brother's in-
tention to defraud his creditors, if such intention existed. At
the time Ira's property in East Portland was attached it was
estimated to be worth about $3,000, though incumbered by a
mortgage for the sum of $500. That property was sold under
an execution issued upon the brewing company's judgment,
and was never redeemed. But such failure to secure a restora-
tion of the estate does not necessarily prove that Ira enter-
tained an intent to defraud his creditors at the time he exe-
cuted the deed to his brother, for he may have thought the
East Portland property sufficient to pay the sum due on plain-
tiff's notes, which seem to be a part of the series executed by
him, to which the Gambrinus Brewing Company note be-
longed. The financial crisis which occurred about the time of
or soon after the property was attached disappointed the ex-
pectations of many debtors in respect to the value of their
property, and defeated their hopes of its bringing, upon a
forced sale, any greater sum than the creditors' demand. The

state of the money market at that time was such that it was almost impossible to secure a loan upon property, so that its redemption could be effected. We do not think Ira, at the time the conveyance was made to his brother, entertained an intent to defraud his creditors. He owed Hume at that time, and if such intent were cherished it seems unreasonable that he should have informed him that he was going to transfer the land in question to David to defraud any of his cerditors; and this fact alone seems to render Hume's statement improbable. But, however this may be, we do not think the testimony shows that David had any knowledge or notice of his brother's fraudulent intent until after he had paid the entire consideration for the land. David had long desired Ira's land as an addition to his farm, and had been negotiating for its purchase, hoping thereby to secure the settlement of Ira's indebtedness to him. It is admitted that the property was not worth more than $8,000, and that David paid therefor this consideration, which is fully accounted for, except as to about $700. It is difficult to say with any degree of certainty what sum was due him at the time the deed was executed. David and Ira testified that it was about $2,700, but they cannot give the detailed items, except as to about $2,000. David says that at different times he loaned his brother sums varying from $10 to $250, and in this he is corroborated by Ira.

Plaintiffs' counsel, in support of their contention that the court erred in dismissing the suit, rely upon the case of *Marks v. Crow,* 14 Or. 382 (13 Pac. 55), where it was held that one who was in debt at the time of conveying substantially the whole of his estate to his brother, ostensibly in satisfaction of his debt to the latter, in a suit by creditors to set aside the deed for fraud it is incumbent upon the grantee to establish by satisfactory proof that there was a valuable and adequate consideration for the deed, and unless he can give a clear and precise account of the items constituting the alleged debt a fraudulent intent will be inferred. But in the case at bar the trial occurred about five and one half years after the deed was executed, and it is not strange that the defendants cannot give a

correct itemized account of the debt due from Ira to David. At that time the brothers possessed quite an amount of property, and had transacted considerable business, and it is not at all strange that they cannot, in a transaction involving $8,000, account for about $700, except by saying that it was made up of small loans, which, at the time of the transfer, was estimated to be about that sum. David Wheeler testifies that he kept no books, and relied upon his brother's memoranda of the loans. If, under these circumstances, he had attempted to give a detailed account of every dollar which went to make up the $700, it might be well considered as a circumstance tending to impeach his veracity, particularly so after such a lapse of time. The witness Hume contradicts himself in many instances, and the trial court having seen him, and noted his manner and bearing on the stand, its opinion is entitled to much weight, But, aside from such opinion, we do not think the evidence sufficient to change the conclusion reached.

It follows that the decree is affirmed.        AFFIRMED.