Argued September 6, decided September 16, 1913.

# COFFEY v. SCOTT.

(135 Pac. 85.)

**Fraudulent Conveyances—Knowledge and Intent of Grantee—Actual Notice.**

1. A notice to a grantee of the fraudulent intent of a grantor, which will defeat a conveyance based on a valuable consideration, must be more than such as would excite the suspicion of a cautious person, and must be such as would make it fraudulent in him afterward to retain the property.

**Fraudulent Conveyances—Evidence—Presumption.**

2. Where a transaction is susceptible of two interpretations, one consistent with good faith, and the other with a fraudulent intent, the construction consistent with good faith will be preferred.

**Fraudulent Conveyances—Knowledge of Grantee—Actual Notice.**

3. Where a mother bought land from her son for a valuable consideration in order to enable him to pay his debts, as he stated he desired to do, she did not have notice of an intention on his part to defraud his creditors, as required by Section 7401, L. O. L., even though it did not appear that he had paid any of his creditors, since it is the prior intent of the grantor, as known to the grantee, which binds the latter, and not a subsequent intent.

[As to knowledge of the grantee as affecting the validity of a fraudulent conveyance, see note in 34 Am. St. Rep. 395.]

**Fraudulent Conveyances—Indebtedness of Grantors—Intent to Defraud.**

4. The mere indebtedness of an owner of land does not deprive him of the right to sell it as he pleases, so long as he does not thereby intend to defraud his creditors.

**Fraudulent Conveyances—Remedies of Creditors—Sufficiency of Evidence—Consideration.**

5. In a suit by an administrator of an insolvent estate to set aside as fraudulent a conveyance by the decedent to his mother, made shortly before his death, evidence *held* sufficient to show that the mother had paid a valuable consideration for the land.

[As to relief from fraudulent conveyances after the death of the grantor, see note in 135 Am. St. Rep. 329.]

**Fraudulent Conveyances—Intent of Grantee—Effect of Good Faith.**

6. Where a conveyance is made for a valuable consideration and in good faith in so far as the grantee is concerned, the grantee is not bound to follow the proceeds and see that they are applied to the payment of the grantor's debts.

*66 Or.—30*

Fraudulent Conveyances—Remedies of Creditors—Burden of Proof—
Transactions Between Relatives.

7.　Where a conveyance between near relatives is attacked as fraudulent, the burden is upon the grantee to prove good faith, want of previous notice, and a valuable consideration; but the proof need only be by a preponderance of the evidence.

From Grant: DALTON BIGGS, Judge.

Department 1.　Statement by MR. JUSTICE BURNETT.

This is a suit by John B. Coffey, as administrator of the estate of Grant Scott, deceased, confessedly insolvent, against Elizabeth J. Scott, to set aside a conveyance by the decedent in his lifetime, alleged to have been made with intent to defraud creditors. It is charged that the defendant, the mother of the decedent, to whom the land was sold, paid no consideration for the deed, but conspired with him to cheat and defraud his creditors, in pursuance of which he voluntarily executed the conveyance in question.

The complaint is challenged by the answer in material particulars, and the defendant further alleges, in substance, that she paid a valuable consideration for the realty, and took title to the same as a purchaser in good faith, without any notice of any intent on the part of her grantor to defraud creditors. The answer, in turn, is traversed by the reply.

SUIT DISMISSED.

For appellant there was a brief over the names of *Mr. Isham N. Smith* and *Mr. John F. Logan*, with an oral argument by *Mr. Smith.*

For respondent there was a brief over the names of *Mr. Raphael Citron* and *Mr. John C. Schillock*, with an oral argument by *Mr. Citron.*

MR. JUSTICE BURNETT delivered the opinion of the court.

In Oregon the law pertinent to cases of this kind is statutory. It is enacted in substance by Section 7397, L. O. L., that every conveyance of any estate or interest in lands, made with the intent to hinder, delay or defraud creditors of their lawful suits or debts, as against the person so hindered, delayed or defrauded, shall be void. Other sections applicable are here quoted in full:

"Sec. 7400. The question of fraudulent intent in all cases arising under the provisions of this chapter shall be deemed a question of fact, and not of law.

"Sec. 7401. The provisions of this chapter shall not be construed in any manner to affect or impair the title of a purchaser for a valuable consideration, unless it shall appear that such purchaser had previous notice of the fraudulent intent of his immediate grantor, or, of the fraud rendering void the title of such grantor."

It is necessary under this section to ascertain whether or not a valuable consideration was paid for the real property in question; and, if that is determined in the affirmative, the matter is still open to the further inquiry of whether or not the purchaser had previous notice of the fraudulent intent of his grantor, if there was such intent.

1. On the question of notice, while it is true that from the very nature of things notice and intent must be proved often by circumstantial evidence, and that it is frequently impossible to get direct testimony on these points, yet, as said by Mr. Justice WOLVERTON, in *Raymond* v. *Flavel*, 27 Or. 219 (40 Pac. 158) : "The notice must be more than would excite the suspicion of a cautious and wary person; it must be so clear and undoubted, with respect to the existence of

a prior right, as to make .it fraudulent in him afterward to take and hold the property."

2. It is also stated by Mr. Justice Watson, in the case of *Hurford* v. *Harned*, 6 Or. 362: "That a court of equity will never presume fraud when the transaction under their investigation is equally susceptible of two explanations, one of which is consistent with a fraudulent intent, and the other with good faith and fair dealing. In such case, that construction of the acts of the parties which is consistent with good faith and fair dealing will be preferred": See, also, *Sabin* v. *Columbia Fuel Co.*, 25 Or. 15 (34 Pac. 692, 35 Pac. 854, 42 Am. St. Rep. 756). The standard approved by Mr. Justice Moore, in *Garnier* v. *Wheeler*, 40 Or. 198 (66 Pac. 812), and derived from Wait on Fraudulent Conveyances, is this: "Three things must concur to protect the title of the purchaser: (1) He must buy without notice of the bad intent on the part of the vendor; (2) he must be a purchaser for a valuable consideration; and (3) he must have paid the purchase money before he had notice of the fraud." With these principles in view we proceed to examine the testimony in the case.

3. The land consisted of. two quarter-sections of timber land in Grant County, the title to which was in the decedent prior to the conveyance in dispute. He had been operating a liquor saloon in Portland for a number of years. After his death all the property which came into the hands of the administrator was only of the value of about $1,500, while claims in the neighborhood of $5,000 had been presented against the estate. For about two years the deceased had lived with his mother and sister. Prior to that time he had lived in rooms in the City of Portland, having been divorced from his wife, who had removed to California with their two children. He died of pulmonary tuber-

culosis about seven weeks after the execution of the
deed in question. His.sister was a pianist, who gave
music lessons, belonged to the Musicians' Union, and
played in theaters and for dancing parties as a regular
business. She testified that, as a result of several years'.
savings, she had accumulated $1,900, which at the time
of the execution of the deed was on deposit in the
savings department of the Security Savings & Trust
Company, a bank in the City of Portland. As to the
fact that she had the money on deposit there, she is
corroborated by the testimony of the paying teller of
the bank. There is no intimation in the testimony that
the money was or could have been obtained otherwise
than as stated by the defendant's witnesses.

For some time prior to the execution and delivery
of the deed, creditors of the deceased had been urging
him to some extent to reduce his indebtedness. He
told them of his ownership of the realty in dispute, and
said that when he could make sale of the property he
would pay them. No action was taken to compel him
to pay, and he was allowed to continue in business.
The testimony shows that he worried considerably
about his creditors, and communicated his troubles to
his mother. She, in turn, laid the case before the
daughter, and the upshot of the matter was that the
daughter loaned the money to the mother, who paid it
to the decedent and took the conveyance in question,
which she at once placed on record in Grant County.

The defendant testifies that her son told her that he
wanted the money to pay his creditors, and she says
in substance that, principally to ease his mind, she got
the money from her ·daughter· and paid it to him for
the land to enable him to satisfy his creditors. The
only evidence as to the intent with which the convey-
ance was made is found in the declarations of the de-
fendant that her son wished to pay his creditors. She

did not know how much he was in debt, and there is no testimony whatever imputing to her any knowledge of the amount of his indebtedness. So far as the question of the intent of the conveyance is concerned, the evidence as to the situation at and prior to the conveyance is all in favor of the good intent of raising funds to pay his debts.

4. The indebtedness of the grantor does not destroy his right of alienation. He is at liberty to sell his property when, where, to whom, and on what terms he pleases, so long as he does it without the wrongful intent denounced by the statute. In order to defeat the sale, the intent of the grantor to defraud his creditors must be established in all cases. Even then, however, it does not affect the grantee, unless it further appears that the latter participated in or had knowledge of the former's purpose to swindle his creditors. It is the prior intent of the grantor, known to the grantee, which binds the latter, and not any subsequent intent, which may be conceived as an afterthought: *Ellet-Kendall Shoe Co.* v. *Ross,* 28 Okl. 697 (115 Pac. 892); *Pippin* v. *Tapia,* 148 Ala. 353 (42 South. 545).

It is true that none of the creditors represented in the list of claims presented to the administrator were paid after the decedent got possession of the money. Neither is there any showing whether or not the decedent was indebted to other persons. It is true, also, that nothing is disclosed by anyone about the disposition by the decedent of the money paid. It would have been helpful to the defendant if she could have shown that her son had applied the money upon his indebtedness, for that would have destroyed the imputation of fraudulent intent. Such showing, however, is not essential to her case, when she did not know of such a purpose on his part. Besides, death has removed the

probable source of information on that point. To hold under such circumstances that the defendant must account for the disposition of the money after she had paid it to the grantor would be to nullify the provision of Section 7401, L. O. L., basing the defeat of fraudulent conveyances on the grantee's previous knowledge of the wrongful intent of the grantor.

5. The testimony about the actual payment of the money is substantially as follows: The defendant went to the office of an attorney suggested by her son, to whom he had given directions about preparing the deed, and there awaited the arrival of her son. At the same time the decedent and his sister went to the bank, and she withdrew her savings account of $1,900, receiving therefor a cashier's check, which she indorsed to the decedent. He drew the money from the bank and went to the office of the attorney, while the sister went to her place of employment. The attorney and the defendant both testify that the son attended at the office of the attorney, signed and acknowledged the deed, and the defendant, to whom the decedent had delivered the money after having drawn it out of the bank, then paid the money to him. The mother testified that she returned home and the decedent went about his business, and she saw him no more that day, nor until about 10 o'clock that night, when he returned home.

Attacking the probability of the transaction as detailed by the defendant and her witnesses, counsel for the plaintiff relied greatly at the hearing upon the testimony of two physicians, intimate friends of the grantor, who saw him in the latter part of July, 1908, and who gave their opinion that he was too sick and weak to have come from his mother's home in the eastern part of the city to the west side to transact the business of executing the deed and getting the money.

To some extent this proves too much, for the plaintiff counts on the execution of the deed as one of the principal features of his case. The two medical gentlemen seem to have been affronted by the fact that they were denied admission to see the decedent during his last, illness, and there appears throughout their testimony a vein of debate and combativeness that detracts somewhat from its value. Their opinion evidence, however, is overcome by the positive declarations on that point of the defendant, her daughter, and the attorney who prepared the deed, and, finally, by the admission of counsel for plaintiff appearing before the referee, which we find in the record, that the deceased was personally present in the bank when his sister indorsed to him the check for the money.

6. It follows as a necessary conclusion, under the statute and the principles adverted to, that if a valuable consideration is paid, and there is no previous notice of the fraudulent intent of the grantor, the transaction is fixed as to the one receiving the deed, and that he is not bound to follow the proceeds and see that they are properly applied. When the conveyance is made in good faith, and for a valuable consideration, so far as the grantee is concerned, the transaction is a closed incident; and it cannot affect him, even if the grantor should afterward waste his money in riotous living, or dispose of it contrary to the interest of the creditors.

7. The probability is against fraud. It is presumed that private transactions are fair and regular. There is nothing except surmise and suspicion to contradict the joint testimony of the daughter, of the mother, and of the attorney who witnessed the transaction of the payment of the money. Although the burden of proof rests upon a defendant to explain a transaction between near relatives, yet it is not requisite to convince

him who would not believe though one arose from the dead.

It is unnecessary to go further into the details of the testimony. It is sufficient to say that the preponderance of the evidence is in favor of the proposition that the defendant, equipped with the money furnished by her daughter, who had a right to loan it or give it as she chose, paid a valuable consideration, to wit, $1,900, to the decedent for the land in question without any knowledge whatever of his intent to defraud creditors, but, on the contrary, with the belief, which from the statements of her son the mother had the right to indulge, that he fully intended to pay the same to his creditors. He had a right to pay some creditors and ignore those who are here complaining. The defendant is not bound to pursue the question further than to show her own good faith, want of previous notice, and a valuable consideration. All of these things she has established by the preponderance of the evidence, conforming to the standard approved in *Garnier* v. *Wheeler*, 40 Or. 198 (66 Pac. 812), and she is entitled to a decree dismissing the suit and for the relief for which she prayed. It is so ordered.

SUIT DISMISSED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MOORE and MR. JUSTICE RAMSEY concur.