Argued at Pendleton May 4, affirmed June 8, 1926.

## WILLIAM JONES *v.* THERON R. BEERS ET AL.

### (246 Pac. 711.)

**Attachment.**

1. By attachment plaintiff acquires a lien on real property.

**Fraudulent Conveyances.**

2. Circumstances will be carefully searched, where grantor's creditors attack good faith of transfer of lands by grantor to brother.

**Fraudulent Conveyances—Where Grantor's Creditors Attack Transfer of Lands to Relative, Grantee is Presumed to Participate in Grantor's Fraudulent Intention.**

3. Where grantor's creditors attack good faith of transfer of lands to relative, grantee is presumed to know and participate in grantor's fraudulent intention.

**Fraudulent Conveyances—Where Mortgage of Land to Brother is Attacked by Mortgagor's Creditors as Fraudulent, Mortgagee has Burden of Proving Absence of Notice of Fraud and Value.**

4. Where mortgage of land to brother is attacked by mortgagor's creditors as fraudulent, mortgagee has burden of proving that the mortgage was taken without notice of fraud and for value.

**Fraudulent Conveyances — To Establish Validity of Mortgage of Land to Brother Attacked by Mortgagor's Creditors as Fraudulent, Good Faith, Value and Absence of Notice of Fraud must be Alleged and Proved (§ 10170, Or. L.).**

5. To establish validity of mortgage of land to brother when attacked by mortgagor's creditors as fraudulent, it must be alleged and proved that mortgagee took mortgage in good faith for value without notice of fraud, in view of Section 10170, Or. L.

**Fraudulent Conveyances—Evidence Held Insufficient to Prove That Mortgage of Land Executed to Brother was in Good Faith and for Value.**

6. Evidence *held* insufficient to prove that execution and acceptance of mortgage of land by mortgagor to his brother was in good faith and for value.

---

Fraudulent Conveyances, 27 **C. J.**, p. 642, n. 51, p. 790, n. 39, p. 799, n. 34, p. 801, n. 49 New, p. 833, n. 46, p. 835, n. 63.

From Malheur: DALTON BIGGS, Judge.

---

1. See 2 R. C. L. 856.
2. Transaction between relatives as fraud on creditors, see note in 32 L. R. A. 67.  See, also, 12 R. C. L. 488.

In Banc.

This is a suit instituted by plaintiff, William Jones, against the defendants, Theron R. Beers, Lizzie T. Beers and Eli I. Beers, to have a mortgage for $13,500 decreed to be fraudulent and void.

Prior to the institution of this suit William Jones, as plaintiff, had commenced an action in the Circuit Court for Malheur County, Oregon, against Theron R. Beers and Lizzie T. Beers, to recover judgment on certain promissory notes due and owing from Theron R. Beers and Lizzie T. Beers. In that action the mortgaged lands involved in this suit were attached. Subsequent to the attachment of the lands this suit was begun.

Among other things the complaint in this suit avers that this mortgage for $13,500, made by Theron R. Beers and Lizzie T. Beers on their attached lands, was fraudulent and void; was given without consideration therefor, and for the single purpose of hindering, delaying and defrauding their creditors; that the defendant Eli I. Beers, a brother of Theron R. Beers, knowingly took said mortgage for the sole purpose of aiding and assisting Theron R. Beers and his wife, Lizzie T. Beers, in hindering, delaying and defrauding their creditors; and that defendants have no other property from which plaintiff's claim may be satisfied.

The appellant, Eli I. Beers, filed an answer and cross-complaint in which he admitted taking the mortgage for $13,500, but denied the allegations of the complaint relating to the want of consideration, fraudulent design, purpose, intent or knowledge upon his part in taking the mortgage. In his cross-com-

plaint against plaintiff, William Jones, and the defendants Theron R. Beers and his wife, Lizzie T. Beers, Eli I. Beers seeks the foreclosure of the mortgage for $13,500, and of another mortgage against the lands for $6,327.80, and of two certain chattel mortgages. However, the only question involved in this appeal relates to the mortgage for $13,500.

The defendants Theron R. Beers and Lizzie T. Beers filed their answer to the complaint of plaintiff in which they denied all allegations relating to the alleged fraudulent execution by them of the mortgage for $13,500, and averred their good faith in its execution and delivery to their codefendant Eli I. Beers. Issues to the new matter were made by the reply and testimony was adduced by plaintiff and defendants in support of their respective allegations.

Upon the hearing the court found, among other things, that the defendants Theron R. Beers and Lizzie T. Beers, without any consideration moving from their codefendant therefor, but intending to hinder, delay and defraud their creditors, did, on the twenty-ninth day of February, 1916, make and execute a mortgage on the premises described in the complaint to Eli I. Beers, for the sum of $13,500; that the defendant Theron R. Beers caused the mortgage to be recorded in the record of mortgages for Malheur County, Oregon, and that such mortgage still remains of record in that county, and constitutes a cloud on the title to the lands described therein, and prevents plaintiff from collecting the amounts of money due him from the defendants Theron R. Beers and Lizzie T. Beers, and that the mortgage was taken and received by Eli I. Beers with full knowledge of the intent and purpose of his

codefendants; that the mortgage was void as between the plaintiff and defendant, but is a valid mortgage as between the defendants Theron R. Beers and Lizzie T. Beers and Eli I. Beers.

From the decree of the court pronouncing the mortgage assailed fraudulent and void, the defendant, Eli Beers, appeals.        AFFIRMED.

For appellant there was a brief and oral argument by *Mr. Ed. R. Coulter.*

For respondent there was a brief over the names of *Mr. J. W. McCulloch* and *Mr. Bruce Kester,* with an oral argument by *Mr. McCulloch.*

For respondents (and defendants) Theron R. Beers and Lizzie T. Beers, there was a brief over the name of *Mr. C. M. Crandall.*

BROWN, J.—It is alleged and admitted that on April 1, 1914, the defendants Theron R. Beers and his wife, Lizzie T. Beers, made and delivered to the plaintiff their promissory note for $1,350, bearing interest at the rate of 10 per cent per annum; that no payments have been made thereon, except the sum of $185.14, paid July 14, 1917; that on July 1, 1915, the same defendants made and delivered to the First Bank of Juntura, at Juntura, Oregon, their promissory note for the sum of $4,071.88, bearing interest at the rate of 10 per cent per annum; that no payments have been made thereon, except the sum of $814.36, paid on the fourteenth day of July, 1917, and that the plaintiff is the owner and holder of each of these notes. It is further admitted that plaintiff commenced an action as alleged for the

collection of the notes above described, and attached the lands covered by the mortgage involved herein; and that the defendants Theron R. Beers and Lizzie T. Beers have no other property from which the plaintiff can satisfy his judgment or collect from them the amounts due him. It is also admitted that the defendant Eli I. Beers is a brother of his co-defendant, Theron R. Beers.

The only question to be determined by this court relates to the validity of the mortgage given to secure a promissory note for the sum of $13,500, by Theron R. Beers and his wife, Lizzie T. Beers, to Eli I. Beers. The plaintiff contends that this mortgage was made by Theron R. Beers and his wife, Lizzie T. Beers, to their brother Eli I. Beers, with the intention of hindering, delaying and defrauding the creditors of Theron R. Beers.

"Every conveyance or assignment in writing or otherwise of any estate or interest in lands * * made with the intent to hinder, delay, or defraud creditors * * as against the persons so hindered, delayed or defrauded, shall be void." 2 Or. L., § 10170.

1–3. Before the plaintiff instituted this suit he acquired a lien upon the real property involved herein by attachment: *Dawson* v. *Coffey,* 12 Or. 513 (8 Pac. 838); *Bennett* v. *Minott,* 28 Or. 346 (39 Pac. 997, 44 Pac. 288). The circumstances surrounding a transfer of lands by a grantor to a brother will be carefully searched when the good faith of such transaction is attacked by the grantor's creditors: *Marks* v. *Crow,* 14 Or. 382 (13 Pac. 55); *Garnier* v. *Wheeler,* 40 Or. 198 (66 Pac. 812). This court has announced that:

118 Or.—21

"Conveyances from one relative to another, when attacked by the creditors of the grantor, will always be closely scrutinized, for from the very relation of the parties it is scarcely to be supposed that the circumstances and intention of the grantor were not known to the grantee. *Castro* v. *Illies,* 22 Tex. 479 (73 Am. Dec. 277)." *Jolly* v. *Kyle,* 27 Or. 95 (39 Pac 999).

It is a presumption in such cases that the grantor's fraudulent intention is known and participated in by the grantee: *Garnier* v. *Wheeler, supra,* and local citations.

4, 5. Here we have a mortgage for $13,500, given by a brother to another brother at a time when the grantor's creditors were pressing him for settlement for several thousand dollars due them.

The transaction relating to the making and delivering of the mortgage having been assailed as fraudulent, the burden of proof to establish that the mortgage was taken by the mortgagee without notice of the fraud and for a valuable consideration is cast upon him: *Weber* v. *Rothchild,* 15 Or. 385 (15 Pac. 650, 3 Am. St. Rep. 162); *Stubling* v. *Wilson,* 50 Or. 282 (90 Pac. 1101, 92 Pac. 810); *United States Nat. Bank* v. *Thebaud,* 65 Or. 317 (132 Pac. 1168). Before Eli I. Beers can establish that he has a valid mortgage lien it must be alleged and proved that he took the mortgage in good faith and for value, and without notice: *Bailey* v. *Hickey,* 99 Or. 251 (195 Pac. 372).

6. The record discloses that a short time before the execution and recordation of the mortgage in question, the cashier of the Juntura Bank wrote the defendant Theron R. Beers a letter, and requested him to come in and secure the note that he owed

the bank, as well as the note made to plaintiff, William Jones, by a mortgage for the amount due them. Mr. Beers replied and informed the cashier that the 'roads were so bad he was unable to bring his wife to the bank at that time, but made no reference as to whether he was willing to give security. A short time thereafter the defendants Theron R. Beers and wife, Lizzie T. Beers, went to Vale, the county seat of Malheur County, and executed a note and mortgage for $13,500, to their codefendant, Eli I. Beers, a resident of Battle Creek, Iowa. They likewise executed to that brother a chattel mortgage for $5,330, that embraced all of their personal property, including livestock and farming implements. After covering his property with the protection of a lien, Theron R. Beers then advised the bank of the mortgage given upon his farm for $13,500.

Theron was indebted to a number of other persons in Malheur County to the amount of $11,000 or $12,000, and he made application to a loan company for the purpose of securing sufficient money to satisfy all of these claims· and for about $2,500, for making improvements upon his farm. At that time he represented in effect that the sums he owed to the several parties in Malheur County constituted his entire indebtedness. No allusion was ever made to any indebtedness that he owed his brother until after the time the bank sought to collect the amount due it. Thereupon, he went to Vale, and executed mortgages to his brother upon all real and personal property possessed by him.

In our reference hereinafter to loans made by Eli to Theron R. Beers, we do not include the sums forwarded to Theron that were due him from certain

estates or for the rents or the purchase price of certain lands.

We have made a careful study of the evidence disclosed by the record and are convinced that Theron R. Beers furnished the data to his brother, Eli I. Beers, from which an important letter adduced as evidence was prepared. This letter bears date, Battle Creek, Iowa, January 15, 1916, and recites numerous loans from Eli to Theron Beers, running through many years. The circumstances surrounding the composition of this communication from Eli to Theron leads us to the belief that it was prepared in view of a probable lawsuit. According to the testimony, Theron seemed to have had unlimited credit with Eli until the bank wanted the money due it. The taking of the mortgage in the instant case by Eli from Theron does not comport with their former method of doing business, when Eli says he loaned Theron large sums of money without security, and without a scratch of a pen as evidence of such loans. It is strange that the unlimited confidence that Eli had in Theron disappeared at the moment the bank wanted its pay, as he then sought to protect all of his previous loans. In view of so many alleged loans which the defendants say involved written correspondence, it is peculiar that no writing evidencing any loan has been preserved prior to the "prepared" letter hereinbefore referred to. From a careful persual of the record we are impelled to conclude that the defendants failed to establish the burden cast upon them to prove that the execution and acceptance of the mortgage was in good faith and founded upon a valuable consideration.

It follows that the decree of the lower court is affirmed.                                   AFFIRMED.