Argued July 2, reversed July 20, 1926.

# WILLAMETTE GROCERY COMPANY *v.* MARK S. SKIFF ET AL.

### (248 Pac. 143.)

**Fraudulent Conveyances.**

1. Voluntary conveyance, without consideration, from parents to son, while father was heavily in debt, *held* fraudulent and void as against creditors notwithstanding son did not know of father's fraudulent intent, in view of Sections 10170, 10174, Or. L.

**Fraudulent Conveyances—Where Deed from Father to Son was Made While Grantor was Heavily in Debt, Grantee had Burden to Show that Conveyance was Bona Fide and for Valuable Adequate Consideration.**

2. In creditors' suit to set aside fraudulent conveyance, deed from father to son, made while grantor was heavily in debt, with evidence establishing indebtedness, *held* to make *prima facie* case putting burden on grantee to show *bona fides* of transaction and that conveyance was made for valuable, adequate consideration.

**Fraudulent Conveyances.**

3. "Inadequacy of consideration" for transfer of land is evidence of grantor's fraudulent intent and grantee's knowledge thereof, and "gross inadequacy" such as shocks moral sense, establishes fraudulent intent.

**Fraudulent Conveyances.**

4. Fraudulent voluntary conveyance can be set aside by creditor, regardless of whether grantee participated in fraud.

Fraudulent Conveyances, 27 **C. J.**, p. 414, n. 17, p. 484, n. 40, p. 647, n. 21 New, p. 790, n. 39, p. 799, n. 40 New, p. 829, n. 14, p. 833, n. 46.

From Marion: GEORGE G. BINGHAM, Judge.

Department 2.

This is a creditors' suit to set aside a deed executed by defendants Mark S. Skiff and Ada V. Skiff,

1. What constitutes voluntary conveyance, see notes in 14 Am. St. Rep. 739; 56 Am. St. Rep. 349; 119 Am. St. Rep. 556. See, also, 12 R. C. L. 592.
2. Burden to show *bona fides* of transaction, see note in 34 Am. St. Rep. 402. See, also, 12 R. C. L. 667.
3. Inadequacy of consideration as evidence of fraud, see notes in 14 Am. St. Rep. 739; 9 L. R. A. 414, 465; 5 L. R. A. (N. S.) 395. See, also, 12 R. C. L. 478.
4. See 12 R. C. L. 535.

his wife, to their son, Mark S. Skiff, Jr., as in fraud of the rights of the creditors. A decree was rendered in favor of defendants from which plaintiff and defendant First State & Savings Bank appealed.

The First State & Savings Bank, a corporation, was made a party defendant for the reason it claimed some right to the real estate by virtue of an attachment levied thereon. The bank answered claiming the same relief as claimed by the plaintiff. The defendants Skiff answered denying the material allegations of the complaint and the answer of the bank, except the corporate capacity of the plaintiff and the defendant bank, and the relationship of the defendants Skiff, and alleged that the defendant bank held other security for the claim referred to in its answer.

REVERSED.

For appellants there was a brief over the names of *Messrs. Smith & Shields* and *Messrs. McNary, McNary & Keyes,* with oral arguments by *Mr. Guy O. Smith* and *Mr. Walter E. Keyes.*

For respondents there was a brief and oral argument by *Mr. Walter C. Winslow.*

BEAN, J.—On April 17, 1922, defendant Mark S. Skiff for a valuable consideration executed to Edna Ross his promissory note for the sum of $800, payable 90 days after date. On May 1, 1922, Edna Ross indorsed and delivered the note to the defendant bank as collateral security to secure a loan theretofore made by the bank to Edna Ross and her husband Wilburt J. Ross, upon which there was then due $604. After the maturity of the Skiff note, the bank, being unable to collect, instituted an action in

the circuit court for Marion County, Oregon, and there-after on March 31, 1923, recovered judgment by default against Mark S. Skiff in the sum of $800 and accruing interest, costs and attorneys' fees. On June 16, 1923, the bank caused to be issued an execution upon the judgment directed to the sheriff of Marion County, the county in which said defendant resided, but the sheriff was unable to find any property in the county subject to execution and returned the same to the court with the certificate to that effect. At the time the note was given, upon which the bank procured its judgment, Mark S. Skiff owned a certain interest in valuable business property in the City of Salem, Oregon, for which he and his wife executed a deed to his son, Mark S. Skiff, Jr., as a gift. The deed was executed a few days before the note matured. There was given to the bank as collateral to secure the Ross note an automobile note, but it was found the car covered therein was not worth repossessing. There was also assigned to the bank as collateral to secure the Ross note, a judgment against Kuffner-Crahane Lumber Company, the unpaid portion of which was found to be uncollectible before this suit was instituted.

The plaintiff, Willamette Grocery Company, was a judgment creditor of the defendant Mark S. Skiff in the sum of $614.96. The judgment was rendered in favor of plaintiff and against Mark S. Skiff on January 4, 1923. April 5, 1923, plaintiff issued an execution on the judgment directed to the sheriff of Marion County, Oregon, where the defendants resided, but the sheriff was unable to find any property subject to the execution and returned the same *nulla bona.* The property involved is described as follows:

"The south three-fourths of Lot Two (2) in Block Thirty-three (33) in the city of Salem, in Marion County, Oregon, as said lot is shown and designated on the plat of said City of Salem, now on file and of record in the office of the Recorder of Conveyances for said Marion County, Oregon."

On June 20, 1922, while the above-mentioned indebtedness and other large amounts of indebtedness of the defendant Mark S. Skiff existed, the defendant Mark S. Skiff and his wife executed and placed of record a deed purporting to convey the real premises above described to the defendant Mark S. Skiff, Jr. The deed was executed without consideration therefor as a gift to the defendant Mark S. Skiff, Jr. In July, 1922, the defendant Mark S. Skiff executed a trust deed of several tracts of real estate to the Ladd & Bush Bank of Salem, being all of the real estate owned by him except the real estate involved in this suit, to secure an indebtedness to that bank of $18,000.

The trial court found, among other things, that on June 20, 1922, the defendant Mark S. Skiff was the owner of a leviable interest in the lands described, and on that day, without any consideration therefor, except a prior promise to carry out an unenforceable request of his father to convey such lands to his son Mark S. Skiff, Jr., executed the deed in question to his son; that the grantee Mark S. Skiff, Jr., had no notice or knowledge of any indebtedness due or owing from the grantor to the plaintiff or the defendant bank, or any knowledge concerning his father's financial affairs, "and the said Mark S. Skiff, Jr., did not accept such deed with the purpose or intention of hindering, delaying or defrauding the creditors of his father. The conveyance from the father to the son was voluntary."

For that reason the Circuit Court rendered a decree in favor of defendant Skiff.

1, 2. Section 10170, Or. L., provides that every conveyance of any estate or interest in lands made with the intent to hinder, delay or defraud creditors, or other persons of their lawful suits, damages, debts or demands as against the person so hindered, delayed or defrauded, shall be void.

Section 10174, Or. L., directs as follows:

"The provisions of this chapter shall not be construed in any manner to affect or impair the title of a purchaser for a valuable consideration, unless it shall appear that such purchaser had previous notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor."

It is clearly shown by the testimony that the defendant Mark S. Skiff, at the time of the execution of the deed in question, was heavily involved financially and that the execution of the deed would at lease hinder and delay plaintiff and the defendant bank in the collection of their demands against defendant Skiff.

Where a deed is made by a father to his son, when the deed is placed in evidence and the creditor's indebtedness is established as existing at the time, a *prima facie* case is made out and the burden of proof is on the defendant grantee to show the *bona fides* of the transaction and that the conveyance was made for a valuable, adequate consideration. It is not enough for such a grantee to show that he had no previous notice of the fraudulent intent of his immediate grantor, but he must also show that he was a purchaser for a valuable consideration: *Wright* v. *Craig,* 40 Or. 191, 197 (66 Pac. 807).

The defendants cite and rely upon *Coffee* v. *Scott,* 66 Or. 465 (135 Pac. 88). They have not brought themselves within the rule enunciated in that case. In the opinion in that case written by Mr. Justice BURNETT, on page 472 we read:

"When the conveyance is made in good faith, and for a valuable consideration, so far as the grantee is concerned, the transaction is a closed incident; and it cannot affect him, even if the grantor should afterward waste his money in riotous living, or dispose of it contrary to the interest of the creditors."

In the case of *Coffee* v. *Scott,* 66 Or. 465 (135 Pac. 88), it was shown that the conveyance sought to be set aside in fraud of creditors was executed in good faith and for a valuable consideration. The conveyance made by Mark S. Skiff to his son, who is a member of his family, while the father was heavily in debt, cast upon the grantee Mark S. Skiff, Jr., the burden of proving the conveyance was made for a valuable consideration, in good faith and without intent to defraud the creditors of the grantor: *Hillsboro Nat. Bank* v. *Garbarino,* 82 Or. 405, 410 (161 Pac. 703); *Garnier* v. *Wheeler,* 40 Or. 191, 201 (66 Pac. 812); *Brown* v. *Case,* 41 Or. 221, 233 (69 Pac. 43); *Flynn* v. *Baisley,* 35 Or. 268, 271 (57 Pac. 908, 76 Am. St. Rep. 495, 45 L. R. A. 645); *Blackabee* v. *Seaward,* 112 Or. 675 (231 Pac. 146).

3. The defendant Mark S. Skiff makes the excuse for not paying the judgment referred to, that he was using his money in the sawmill business. He plainly shows an intent on his part to hinder and delay the payment of the demands asserted herein and his conduct in conveying the real estate described above was fraudulent as to such demands. Inadequacy of consideration is evidence of a fraudulent intent on the

part of the grantor and of the grantee's knowledge thereof, and lack of *bona fides.* Gross inadequacy such as shocks the moral sense establishes fraudulent intent and lack of good faith: *Philbrick* v. *O'Connor,* 15 Or. 15 (13 Pac. 612, 3 Am. St. Rep. 139); *Clark* v. *Philomath College,* 99 Or. 366, 378 (193 Pac. 470, 195 Pac. 822); 12 R. C. L. 478, § 11, and p. 542, § 67; Bigelow on Fraudulent Conveyances (Rev. ed.), 519–603.

It is claimed by defendants Skiff that the defendant Mark S. Skiff, at the time of the conveyance in question, was the owner of sufficient property to liquidate all of his indebtedness. The testimony shows that by the execution of the conveyance in question the rights of the plaintiff and defendant bank were extremely hazarded. It may have been true that under very auspicious circumstances, with success attending him on every hand, Mark S. Skiff would have in time been able to meet his obligations. His creditors were, no doubt, hindered and delayed. There are badges of fraud shown in the testimony.

There was a plain attempt on the part of Mark S. Skiff to cover up his property and prevent the plaintiff and defendant bank from collecting their demands. In September, 1922, he deposited in the Ladd & Bush bank $2,100 and on the same day executed a check for the same amount in favor of his wife for the benefit of his son. He was interested in two sawmills, for one of which the logs had been purchased and conveyed to a stream, but the water was too low to float them to the mill and this hindered him in realizing funds from which to pay his debts.

In *Garnier* v. *Wheeler, supra,* Mr. Justice MOORE, in considering a question like the one in the present case, stated thus, at page 200 of the report:

"Three things," says Mr. Wait in his work on Fraudulent Conveyances (Section 369), "must concur to protect the title of the purchaser: (1) He must buy without notice of the bad intent on the part of the vendor; (2) he must be a purchaser for a valuable consideration; and (3) he must have paid the purchase money before he had notice of the fraud."

4. The conveyance made to Mark S. Skiff, Jr., by his father was made voluntarily and without any consideration. It is therefore not necessary that the grantee should have participated in the fraud before the same can be set aside by a creditor: *Elfelt* v. *Hinch,* 5 Or. 255, 259, 260; *Lyons* v. *Leahy,* 15 Or. 8, 10 (13 Pac. 643, 3 Am. St. Rep. 133); *Wright* v. *Craig, supra; Lowell-Woodard Hdw. Co.* v. *Davis,* 17 A. L. R. 719, note; *Graham Groc. Co.* v. *Chase,* 75 W. Va. 775 (84 S. E. 785, 17 A. L. R. 723, and note 728).

Defendants complain the plaintiff and defendant bank could have satisfied their judgments by levying on property in another county outside of Marion County. From the testimony it seems very doubtful if that could have been done: See 23 L. R. A. (N. S.) 64, 84; *Rohrer* v. *Snyder,* 29 Wash. 199 (69 Pac. 748); *O'Brien* v. *Stambach,* 101 Iowa, 40 (69 N. W. 1133, 63 Am. St. Rep. 368).

As against the plaintiff Willamette Grocery Company and the defendant First State & Savings Bank, the conveyance made by Mark S. Skiff and wife to their son, Mark S. Skiff, Jr., of the property described herein was fraudulent and void, and the conveyance should be set aside as prayed for in plaintiff's complaint.

The decree of the lower court is reversed and one will be entered in accordance herewith.

REVERSED AND DECREE ENTERED.

McBRIDE, C. J., and BROWN and BELT, JJ., concur.